STATE OF NORTH CAROLINA v. CHUL YUN KIM

No. 783A85

(Filed 18 November 1986)

**1. Rape § 4; Criminal Law § 87.1— questioning of rape victim about penetration —no leading question**

There was no merit to defendant's contention in a prosecution for rape that the trial court erred by allowing the State to ask the victim a leading question during direct examination, since the question with regard to penetration, though it could be answered yes or no, was not a leading question as it did not suggest that the victim choose one answer over the other.

**2. Criminal Law § 89.3— prior statements of victim—admissibility for corroboration**

The trial court in a rape case did not commit plain error by allowing the State to introduce as corroborative evidence prior statements of the victim which contained new and additional information not referred to in the victim's testimony since the testimony as to pretrial statements of the victim clearly tended to add weight or credibility to the victim's trial testimony.

**3. Rape § 10; Criminal Law § 50.1— child psychologist—examination as to rape victim's truthfulness—error**

In a prosecution for first degree rape, the trial court erred in allowing an expert witness to testify concerning the victim's truthfulness during the expert's evaluation and treatment of her since the witness's contact with the victim was solely in her role as a child psychologist; the question posed by the prosecutor clearly invoked the witness's status as an expert and sought to establish the credibility of the victim as a witness; the question and answer complained of came immediately after the witness had given lengthy testimony concerning the victim's statements to her about the sexual acts by defendant so that the witness's testimony that the victim had "never been untruthful with me about it" must have been construed by the jury as expert opinion testimony that the victim's accusations against defendant as related to the witness were true; the State's case against defendant hinged almost totally on the credibility of the victim; and the erroneous admission of the expert's testimony demonstrated a reasonable possibility that a different result would have been reached at trial had the error not been committed. N.C.G.S. 8C-1, Rules 405(a) and 608(a).

Justice MARTIN dissenting.

Justices MEYER and BROWNING join in this dissenting opinion.

APPEAL by the defendant from judgment entered on 13 September 1985 by *Ross, J.,* in Superior Court, ROWAN County.

The defendant was convicted, upon proper indictments, for five counts of first degree rape. The trial court consolidated the

cases for judgment and sentenced the defendant to imprisonment for life. The defendant appealed to the Supreme Court as a matter of right under N.C.G.S. § 7A-27(a). Heard in the Supreme Court on 14 October 1986.

*Lacy H. Thornburg, Attorney General, by Michael R. Morgan, Assistant Attorney General, for the State.*

*Cruse and Spence, by Thomas K. Spence, for defendant-appellant.*

MITCHELL, Justice.

The defendant, Chul Yun Kim, has presented six assignments of error on appeal. He contends *inter alia* that the trial court erred by allowing the State to ask the victim a leading question during direct examination. He also asserts that it was error for the trial court to allow a police investigator to give corroborative testimony which went beyond the victim's testimony at trial. The defendant further contends that it was error to permit an expert witness to testify about the truthfulness of the victim during her evaluation and treatment resulting from the crimes charged. He also argues that the trial court erred by denying his motion to dismiss at the close of all the evidence.

We agree with the defendant that the trial court erred by allowing an expert witness to testify concerning the truthfulness of the victim. As a result, the defendant is entitled to a new trial.

The State's evidence tended to show that the victim[1] and her younger sister lived with their father. The victim's mother had visitation rights, and the children stayed with her from time to time on weekends and holidays.

The victim testified that the defendant Chul Yun Kim was her mother's live-in boyfriend. The defendant had sexual intercourse with the victim on many occasions during her visits with

---

1. Use of the victim's name in this opinion is not necessary to distinguish her from other individuals involved in the case and would add nothing of value. Therefore, in keeping with the practice established by this Court in numerous recent cases, her name has been deleted throughout this opinion to avoid further embarrassment. *See, e.g., State v. Hosey,* 318 N.C. 330, 332 n. 1, 348 S.E. 2d 805, 807 n. 1 (1986) and cases cited therein.

her mother in 1984. The victim was either ten or eleven years old on each occasion. Kim was thirty years old in 1984.

On 14 July 1984, the victim's mother and younger sister were shopping and cleaning house, so the victim went with the defendant to his shoeshop in Salisbury. She went to sleep on an army cot in the back room of the shop. While she was asleep, the defendant Kim pulled off her clothes. Kim then awakened the victim and had sexual intercourse with her. He told the victim not to tell anyone, and she complied because she was afraid.

During the weekend of 27-29 July 1984, the victim again went alone with Kim to his shoeshop. He told her to undress, and she did. The defendant again had sexual intercourse with her on the cot.

During the week of 12-19 August 1984, the victim was alone again with the defendant in his shoeshop. At about 5:10 p.m., he turned on a machine, then called the victim's mother to say that he would be late because he had more work to do. He then turned off the machine and had sexual intercourse with the victim.

At the end of August 1984, the victim's mother and younger sister went to the grocery store leaving the victim and the defendant Kim alone in the house. The defendant began to have sexual intercourse with the victim in his bedroom then left and returned with a condom. He put the condom on and completed intercourse with the victim.

The victim's mother later found condoms in Kim's locked briefcase which she had forced open with a screwdriver. She testified that he had never used condoms during sexual intercourse with her.

On 2 November 1984, the victim was awakened when the defendant Kim came into her bedroom and pulled down her underwear in the middle of the night. While the victim pretended to be asleep, the defendant had sexual intercourse with her. Her younger sister, sleeping next to her in the same bed, did not awaken.

The next morning the victim's mother and younger sister went to the shoeshop while the victim and Kim went to Charlotte. When they returned home from Charlotte, the defendant put on

his housecoat and told the victim to put on her mother's house-coat. He then had sexual intercourse with her.

The defendant Kim testified that he came to America from Korea in 1974. He owned a house and worked sixteen hours a day at the shoe repair shop and a mill during 1984. Kim said that he never had sexual relations with the victim, but that she had written him sexually suggestive notes. He also testified that he did not remember having any condoms in the house, and that he had never bought any such things in his life.

[1] The defendant first contends that the trial court erred by allowing the State to ask the victim a leading question during direct examination. Although the defendant acknowledges that he did not object to the question or answer at trial, he contends that admission of the question and answer was such grievous error as to be "plain error" necessitating a new trial. *See generally, State v. Walker,* 316 N.C. 33, 340 S.E. 2d 80 (1986); *State v. Black,* 308 N.C. 736, 303 S.E. 2d 804 (1983). We conclude that the trial court committed neither plain error nor any error at all. The exchange at issue was as follows:

> A. . . . and I sat on the bed and he told me to lay down so I laid down and he spread my legs apart and had sexual intercourse with me.
>
> Q. . . . did you know the term sexual intercourse at that time?
>
> A. No.
>
> Q. Have you learned that in the process of discussion of these matters with other people?
>
> A. Yes.
>
> . . . .
>
> Q. You were ten years old at the time?
>
> A. Yes.
>
> . . . .
>
> Q. *When you say he had sexual intercourse with you, did he get his penis inside you?*

> *A. Yes, he did.*
>
> EXCEPTION NO. 1.

(Emphasis added.)

The question to which the defendant has belatedly taken exception was not a leading question.

> A leading question is generally defined as one which suggests the desired response and may frequently be answered yes or no. [Citations omitted.] However, simply because a question may be answered yes or no does not make it leading, unless it also suggests the proper response.

*State v. Thompson*, 306 N.C. 526, 529, 294 S.E. 2d 314, 316-17 (1982) (quoting *State v. Britt*, 291 N.C. 528, 539, 231 S.E. 2d 644, 652 (1977)). The fact that the question in the present case could be answered yes or no did not make it a leading question, since it did not suggest that the victim choose one answer over the other.

The extent to which a question may be deemed suggestive and, as a result, leading "depends not only on the form of the question but also on the context in which it is put." *State v. Thompson*, 306 N.C. at 529, 294 S.E. 2d at 317. When considered in context, the question here did not suggest an answer to the witness, but merely directed her attention to a proper subject of inquiry without giving her guidance as to whether she should answer affirmatively or negatively. *See generally, State v. Thompson*, 306 N.C. at 529-31, 294 S.E. 2d at 317. The trial court committed no error by allowing either the question or the witness's answer.

[2] Next, the defendant asserts that the trial court committed plain error by allowing the State to introduce as corroborative evidence prior statements of the victim which contained new and additional information not referred to in the victim's testimony. The defendant argues that references to such additional matters rendered the officer's testimony inadmissible for corroborative purposes. We do not agree.

One of the police investigators testified that the victim had used anatomically correct dolls to demonstrate acts of sexual intercourse, cunnilingus, sodomy and fellatio which the defendant had committed with her. The victim had testified at trial only

about acts of sexual intercourse. The defendant made no objection to the investigator's testimony in this regard. Therefore, our review is limited to a review for plain error, and we conclude that none occurred.

In order to be admissible as corroborative evidence, the pretrial statement of a witness need not merely relate facts brought out in the witness's testimony at trial. A witness's prior oral and written statements, although including additional facts not referred to in his trial testimony, may be admitted if they tend to strengthen and add credibility to his trial testimony. *State v. Ramey*, 318 N.C. 457, 349 S.E. 2d 566 (1986); *State v. Riddle*, 316 N.C. 152, 340 S.E. 2d 75 (1986); *State v. Higgenbottom*, 312 N.C. 760, 324 S.E. 2d 834 (1985). Here, the testimony as to pre-trial statements of the victim clearly tended to add weight or credibility to the victim's trial testimony and were, therefore, admissible[2] as corroborative evidence. *See id.*

[3] The defendant also contends that the trial court erred by allowing an expert witness to testify concerning the victim's truthfulness during the expert's evaluation and treatment of her. We agree and hold that the error entitles him to a new trial.

The testimony complained of was part of an attempt by the prosecutor to rehabilitate the victim as a witness after she had been impeached by cross-examination concerning a prior inconsistent statement. The prosecutor sought to demonstrate her character for truthfulness.

Dr. Sharon Barnette, a child psychologist, was qualified at trial as an expert witness in the field of Rehabilitation and School Psychology. The testimony at issue is the following:

Q. Dr. Barnette, as you evaluated and treated [the victim], did you ever find her untruthful with you?

MR. GERNS: OBJECTION.

2. We are not required to decide whether this corroborative evidence could be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." N.C.G.S. § 8C-1, Rule 403 (1986). The prosecutor may choose not to use that part of the victim's prior statement containing matters going beyond her trial testimony at the defendant's new trial. Additionally, no such issue is squarely presented by the defendant as a part of this appeal.

COURT: OVERRULED.

A. She's never been untruthful with me about it. Everything she had to say to me somehow I'd find out later that she was telling the truth.

MR. GERNS: MOVE TO STRIKE.

COURT: DENIED.

EXCEPTION NO. 5

Rule 608(a) of the North Carolina Rules of Evidence addresses impeachment and rehabilitation of a witness's credibility. It provides in pertinent part:

> (a) *Opinion and Reputation Evidence of Character.* The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion as provided in Rule 405(a), but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked . . . .

N.C.G.S. § 8C-1, Rule 608 (1986). The commentary[3] to Rule 608 emphasizes that "[t]he reference to Rule 405(a) is to make it clear that expert testimony on the credibility of a witness is not admissible."

The relevant portion of Rule 405, which governs methods of proving character, provides:

> (a) *Reputation or Opinion.* In all cases in which evidence of character . . . is admissible, proof may be made by testimony as to reputation or . . . in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct. *Expert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior.*

---

3. The commentaries printed with the North Carolina Rules of Evidence, N.C.G.S. § 8C-1, are not binding authority. However, we do give them substantial weight in our efforts to comprehend legislative intent. *State v. Hosey*, 318 N.C. 330, 337-338 n. 2, 348 S.E. 2d 805, 809-810 n. 2 (1986).

N.C.G.S. § 8C-1, Rule 405 (1986) (emphasis added). Rules 608 and 405(a), read together, forbid an expert's opinion testimony as to the credibility of a witness. *State v. Heath,* 316 N.C. 337, 342, 341 S.E. 2d 565, 568 (1986).

We conclude that both the State's question and the expert's answer were improperly allowed. Dr. Barnette's contact with the victim was solely in her role as a child psychologist. Their sessions together began as a result of the acts which resulted in these charges against the defendant. The ten sessions involved psychotherapy to assist the victim in overcoming her negative responses to the incidents. The question posed by the prosecutor clearly invoked Dr. Barnette's status as an expert and sought to establish the credibility of the victim as a witness. Such evidence was inadmissible and should have been excluded. *Id.*

Additionally, the question and answer complained of came immediately after Dr. Barnette had given lengthy testimony concerning the victim's statements to her about the sexual acts by the defendant. Dr. Barnette's testimony that the victim had "never been untruthful with me about it" must have been construed by the jury as expert opinion testimony that the victim's accusations against the defendant as related to Dr. Barnette were true. In short, Dr. Barnette's answer amounted to an expert opinion that the defendant was guilty of the rapes for which he stood charged. The admission of such evidence clearly was error. *State v. Heath,* 316 N.C. at 341-42, 341 S.E. 2d at 569. The jury is the lie detector in the courtroom and is the only proper entity to perform the ultimate function of every trial—determination of the truth. *See United States v. Azure,* 801 F. 2d 336 (8th Cir. 1986) (applying Federal Rules of Evidence); *United States v. Barnard,* 490 F. 2d 907, 912 (9th Cir. 1973), *cert. denied,* 416 U.S. 959, 40 L.Ed. 2d 310 (1974) (same).

Having found error in this regard, we must determine whether the error was prejudicial to the defendant. We conclude that it was.

In order to bear his burden of showing that prejudice exists as a result of an error arising other than under the Constitution of the United States, the defendant must show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at his

trial." N.C.G.S. 15A-1443(a) (1983). In this case, only the defendant and the victim purported to have personal knowledge of whether the rapes charged against the defendant actually had occurred. Each gave testimony absolutely conflicting with the testimony of the other. Therefore, the State's case against the defendant hinged almost totally on the credibility of the victim. Given this situation, we can only conclude that the erroneous admission of the expert's opinion that the victim was telling the truth demonstrates a "reasonable possibility" that a different result would have been reached at trial had the error not been committed. As a result, we hold that the defendant is entitled to a new trial.

The defendant also assigns as error the trial court's denial of his motion to dismiss at the close of all of the evidence at trial. It suffices to say here that the testimony of the victim taken in the light most favorable to the State provided substantial evidence of each element of the offenses charged and substantial evidence that the defendant committed them. This assignment of error is without merit and is overruled.

The defendant has brought forward other assignments of error and supporting contentions. As such purported errors are not likely to recur at a new trial, we find it unnecessary to address them.

For the reasons previously stated herein, the defendant is entitled to a new trial.

New trial.

Justice MARTIN dissenting.

I respectfully dissent. The testimony of Dr. Barnette which the majority decides was erroneously permitted was not an expert opinion as to the victim's character or reputation for truthfulness; the testimony was a response based upon personal knowledge to a factual question. Dr. Barnette testified merely that the victim was "never untruthful with me . . . [and that] [e]verything she had to say to me somehow I'd find out later that she was telling the truth." This is not an expert opinion that the victim was *always* truthful, that is, had a reputation or character for truthfulness, but merely a statement of fact that during Dr. Barnette's firsthand experience with the victim, the victim was

not untruthful to her. Compare *State v. Aguallo*, 318 N.C. 590, 350 S.E. 2d 76 (1986), in which we found error in asking an examining psychiatrist whether he had "form[ed] an *opinion* about whether [the victim] was believable or not" (emphasis added), and *State v. Heath*, 316 N.C. 339, 341 S.E. 2d 565 (1986), in which we found error in asking an expert if she had "an opinion as to whether or not [the victim] was suffering from any type of . . . mental condition which could or might have caused her to make up a story about the sexual assault." Although Dr. Barnette had been qualified to testify as an expert witness, the particular testimony she gave in response to the question ("Dr. Barnette, as you evaluated and treated [the victim], did you ever find her untruthful with you?") was not an expert opinion; it was a factual statement. As such, it falls neither under N.C.R. Evid. 608(a) nor 405 and was properly admitted into evidence.

I also disagree with the majority's assumption that "the testimony complained of was part of an attempt by the prosecutor to rehabilitate the victim as a witness after she had been impeached by cross-examination concerning a prior inconsistent statement." There is no evidence of record that this was the purpose for which the testimony was offered. It could just as well have been offered to test the strength of the witness's own experience with the victim, or for some other purpose.

Finally, assuming, but in no way conceding, that the testimony was erroneously allowed by the trial court, I cannot agree that such an alleged error was prejudicial under N.C.G.S. § 15A-1443(a). The jury had before it plenty of evidence corroborating the victim's account of events. It also heard Dr. Barnette testify that the victim had discussed with her the possibility of lying about the identity of the person who had committed the sexual acts. The jury, as fact finder, was thus well apprised of potential problems with the victim's credibility and could make its own assessment of it. Defendant has failed to show how the testimony at issue here can reasonably be said to have tipped the balance against him.

For these reasons I find no reversible error in the admission of Dr. Barnette's statement.

I am authorized to state that Justices MEYER and BROWNING join in this dissenting opinion.