STATE OF NORTH CAROLINA v. ROBERT JAMES BAYMON

No. 917SC943

(Filed 5 January 1993)

1. **Evidence and Witnesses § 2332 (NCI4th) — child sexual abuse — testimony of expert — credibility of victim**

   The trial court did not err in a prosecution for sexually abusing a child by allowing an expert to testify that children who have been sexually abused do not lie, but erred by allowing the expert to testify that she "had not picked up on anything" to suggest that someone had told the victim what to say and that she had no concerns that the victim had been coached. An expert in child sexual abuse may properly testify regarding the credibility of children in general who relate stories of sexual abuse and there was no abuse of discretion in the trial court's determination that the probative value was not substantially outweighed by the danger of unfair prejudice. The testimony as to coaching bore directly on the victim's credibility.

   **Am Jur 2d, Expert and Opinion Evidence § 191; Evidence § 342.**

   **Necessity and admissibility of expert testimony as to credibility of witness. 20 ALR3d 684.**

2. **Evidence and Witnesses § 2972 (NCI4th) — child sexual abuse victim — specific acts of truthfulness — not admissible**

The trial court erred in a prosecution for sexually abusing a nine year old child by allowing the victim's teacher to testify on direct examination regarding specific instances of conduct which tended to establish the victim's truthfulness where her character for truthfulness was not "in issue" in defendant's trial and where the specific instances of conduct illustrating her character were related on direct examination of her teacher by the State.

**Am Jur 2d, Evidence §§ 342, 344.**

**Construction and application of Rule 608(b) of Federal Rules of Evidence dealing with use of specific instances of conduct to attack or support credibility. 36 ALR Fed 564.**

3. **Evidence and Witnesses § 743 (NCI4th) — child sexual abuse — credibility of victim — evidence of veracity — admission prejudicial**

There was prejudice in a child sexual abuse prosecution in the erroneous admission of testimony from an expert that this victim showed no signs of coaching and testimony from a teacher relating specific instances of truthful conduct where the medical evidence was conflicting and there was a reasonable possibility that, had the trial court not improperly admitted testimony from two witnesses tending to establish the victim's veracity, the jury would have reached a different verdict.

**Am Jur 2d, New Trial § 343.**

**Error in evidentiary ruling in federal civil case as harmless or prejudicial under Rule 103(a), Federal Rules of Evidence. 84 ALR Fed 28.**

Judge WALKER dissenting.

Appeal by defendant from judgments entered 21 March 1991 in Wilson County Superior Court by Judge G. K. Butterfield. Heard in the Court of Appeals 10 November 1992.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Robert J. Blum, for the State.*

*Gibbons, Cozart, Jones, James, Hughes, Sallenger & Taylor, by W. Earl Taylor, Jr., for defendant-appellant.*

GREENE, Judge.

Defendant appeals from judgments entered 21 March 1991, which judgments are based on jury verdicts convicting defendant of two counts of first-degree sexual offense, N.C.G.S. § 14-27.4 (1986), and two counts of first-degree rape, N.C.G.S. § 14-27.2 (1986).

In relevant part, the evidence presented by the State established that Christina, who was nine years old at the time of trial, lived with her mother, her sister, and defendant in Wilson, North Carolina. Christina testified that defendant would make her stay in the house while other children were outside playing, and that he would perform sexual acts on her while they were on the couch in the living room. In essence, Christina testified that defendant penetrated her both vaginally and rectally, and performed cunnilingus on her. The things defendant did to Christina hurt her and she would sometimes bleed. Christina did not tell anyone about defendant's actions because she feared that she would get in trouble.

Christina's cousin testified that on 2 July 1990, Christina told her that defendant had been "messing with her." On 13 July 1990, Christina complained to her cousin a second time, and appeared to have difficulty sitting. Christina went to the bathroom at her cousin's house, and shortly thereafter her cousin found blood in the commode. When questioned, Christina, pointing to her vagina, told her cousin that defendant "stuck his thing in me and caused me to bleed like that." On 14 July 1990, Christina told a similar story to her aunt.

Patty Renfrow (Renfrow), a social worker with Wilson County Social Services, testified that she first met Christina on 2 July 1990, during a visit to Christina's home which was prompted by a referral indicating that Christina and her sister were being neglected and abused by defendant. Christina appeared to be nervous during this visit. Renfrow visited the home again on 14 July 1990, at which time Christina's cousin, Wilson Police Department Detective Tim Bunn, and social worker Debbie Orcutt (Orcutt) were present. Orcutt had been contacted by the police department in response to a call by Christina's aunt indicating that Christina had been sexually abused by defendant and was bleeding from the rectum. Christina told Renfrow that she had been bleeding from her rectum and that defendant had "stuck his ding-dong" in her. Christina's mother, cousin, Detective Bunn, and Renfrow took Christina to Immediate Care. While at Immediate Care,

Renfrow and Detective Bunn interviewed Christina, who told them about defendant's actions and demonstrated cunnilingus and both vaginal and anal intercourse with anatomically correct dolls. Christina was then examined by Dr. Brna for evaluation of possible sexual abuse.

Dr. Brna testified that he performed a genital exam on Christina, which revealed a significant amount of redness and irritation and tenderness around the urinary opening. Dr. Brna testified that such irritation could result from a number of causes, including bubble bath or poor hygiene. Because Christina was very tender, Dr. Brna "could not do a very good vaginal exam," however, he did not see any secretions or tears in the area. A rectal exam revealed no external tears, bruises, or lacerations. Dr. Brna testified on cross-examination that the history he had obtained from Christina and Renfrow prior to performing the examination was that Christina may have been fondled or had some penile contact, but, contrary to Renfrow's testimony, that no penetration had occurred. He further testified that he could not see into the vagina, and could not positively determine whether the hymen was open. Dr. Brna also testified that the redness and irritation was around the urinary opening, above the vagina, and that he saw no evidence whatsoever of sexual abuse in Christina's rectal area. He also stated that, in his medical opinion, there had been no penetration of Christina's vagina.

Christina's teacher, Susan Everett (Susan), testified that Christina is in a class for students who are considered "educable mentally handicapped," and that Christina has an IQ of forty-eight. On direct examination, Susan was asked whether she had "had an opportunity, during the course of the year, to observe Christina in terms of relating factual happenings . . . ." Susan responded, over defendant's objection, that Christina "would relate things to me, . . . like she had been to church, and in a couple of weeks, she'd come and she would be singing a song I know she had learned in church, so I knew she hadn't made that up." Susan further testified that Christina "might would [say] she had been shopping. She'd have on some new clothes so I knew that it was true. . . . I have never had any reason to doubt that what she tells me is not true."

Dr. Vivian Denise Everett (Dr. Everett), director of the child sexual abuse team at Wake Medical Center in Raleigh, North

Carolina, testified as an expert in the field of pediatric medicine and child sexual abuse. Dr. Everett testified that on 31 July 1990, the child sexual abuse team conducted an evaluation for child sexual abuse on Christina. As part of the evaluation, the team's counselor, Kimberly Crews (Crews), conducted a videotaped interview with Christina. Following the interview, Crews discussed the interview with Dr. Everett, who then performed a medical exam on Christina. Dr. Everett's examination of Christina's genital area revealed that the opening of Christina's hymen measured six millimeters, which, according to Dr. Everett, was unusual because children less than thirteen years old should have an opening measuring from zero to four millimeters. Dr. Everett testified that an opening measuring greater than four millimeters is a strong indicator of sexual abuse. The examination also revealed some redness in the vaginal area as well as increased vascularity, which Dr. Everett characterized as "non-specific findings." Dr. Everett did not find any tears or lacerations in the area, however, she stated that, because of the "miraculous healing power" of the hymen, the majority of girls who have been sexually abused show no physical trauma to the hymen. A rectal exam revealed "no abnormality," however, again Dr. Everett explained that it is very difficult to find significant rectal findings in children who have been sexually abused due to the rapid healing process of rectal tissue. Dr. Everett testified that, in her opinion, both the physical exam and the history given by Christina in the interview with Crews were consistent with sexual abuse. The following exchange then occurred between the prosecutor and Dr. Everett:

> Q. In your experience, Dr. Everett, in general, do children lie about sexual abuse?
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled.
>
> A. In my experience children do not lie about sexual abuse.
>
> [DEFENSE COUNSEL]: Motion to strike, Your Honor.
>
> THE COURT: Motion to strike is denied.

On redirect by the prosecutor, Dr. Everett testified as follows:

> Q. Now, your entire evaluation of Christina, including this [videotape] and the physical exam, what, if anything, what

if any fact did you ever pick up on from Christina, anything else you heard, that someone was telling Christina what to say?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

A. I have not picked up on anything to suggest that someone told her.

Q. Have you ever had other cases where you did pick up on that[?]

[DEFENSE COUNSEL]: Objection[.]

A. There have been cases where we have had concerns.

Q. Concerns that have what?

A. That the children may have been coached by someone usually in custody cases.

Q. Do you have these concerns in Christina's case?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

A. No.

Dr. Everett also testified that Crews had died since the interview with Christina, and at the end of Dr. Everett's testimony, the court, over defendant's objection, admitted the videotape as corroborative evidence and allowed the State to show the tape to the jury.

Defendant presented no evidence. The jury convicted defendant of two counts of first-degree sexual offense and two counts of first-degree rape. The trial court sentenced defendant to four consecutive life terms. Defendant appeals, raising numerous assignments of error. Based on the issues raised, we find it necessary to address only the following assignments of error.

The issues presented are whether the trial court erred in allowing, over defendant's objection, (I) child sexual abuse expert Dr. Vivian Denise Everett to testify that, in general, victims of child sexual abuse do not lie and that, in her opinion, Christina had not been coached; and (II) Christina's teacher to relate on

direct examination specific instances of conduct tending to establish Christina's capacity for truthfulness; and (III) if so, whether the errors entitle defendant to a new trial.

I

[1] Defendant argues that the trial court erred by allowing Dr. Everett to testify that, in general, children do not lie about sexual abuse, and that, in Christina's case, Dr. Everett had no "concerns" about Christina having been coached on what to say. According to defendant, the admission of this evidence constitutes prejudicial error entitling him to a new trial.

It is now well-established that an expert witness may not testify regarding the veracity of the prosecuting child witness in a sexual abuse trial. *State v. Oliver*, 85 N.C. App. 1, 11, 354 S.E.2d 527, 533, *disc. rev. denied*, 320 N.C. 174, 358 S.E.2d 65 (1987); N.C.G.S. § 8C-1, Rules 405(a), 608 (1992); *see also State v. Aguallo*, 318 N.C. 590, 598, 350 S.E.2d 76, 81 (1986) (testimony that child was believable inadmissible); *State v. Heath*, 316 N.C. 337, 341, 341 S.E.2d 565, 568 (1986) (testimony that nothing indicated child had a record of lying inadmissible); *State v. Kim*, 318 N.C. 614, 621, 350 S.E.2d 347, 350-51 (1986) (testimony that victim had not been untruthful with expert inadmissible); *State v. Holloway*, 82 N.C. App. 586, 587, 347 S.E.2d 72, 73 (1986) (testimony that child had testified truthfully inadmissible). However, an expert in the area of child sexual abuse may, because of his or her higher degree of understanding of the special traits of such victims, properly testify regarding the credibility of children in general who relate stories of sexual abuse, provided, however, that the probative value of such testimony is not substantially outweighed by the danger of unfair prejudice to the defendant. *Oliver*, 85 N.C. App. at 11-12, 354 S.E.2d at 534.

In the instant case, the trial court qualified Dr. Everett as an expert in the area of child sexual abuse, a ruling which is not challenged by defendant before this Court. Thus, under *Oliver*, Dr. Everett's testimony that, in general, children who have been sexually abused do not lie, was admissible if the court in its discretion properly determined that the probative value of such evidence was not substantially outweighed by the danger of unfair prejudice to defendant. Because the evidence was helpful to the jury in assessing the credibility of child sexual abuse victims, a subject with which most jurors are unfamiliar, it was of probative value, and

STATE v. BAYMON

[108 N.C. App. 476 (1993)]

we discern no abuse of discretion on the part of the trial court in determining that this probative value was not substantially outweighed by the danger of unfair prejudice to defendant.

However, Dr. Everett's statements that she "had not picked up on anything" to suggest that someone had told Christina what to say, and that she had no concerns that Christina had been "coached," bear directly on *Christina's* credibility. As such, the testimony was inadmissible, and the trial court improperly overruled defendant's objection to this evidence.

## II

[2] Defendant argues that the trial court erred by allowing Christina's teacher, Susan Everett, to testify on direct examination regarding specific instances of Christina's conduct which tended to establish Christina's truthfulness. We agree.

North Carolina Rule of Evidence 608 in relevant part provides:

> (a) *Opinion and reputation evidence of character.* — The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion as provided in Rule 405(a), but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

> (b) *Specific instances of conduct.* — Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

N.C.G.S. § 8C-1, Rule 608 (1992). In other words, "specific act evidence is barred except for record proof of conviction of crime and discretionary admission on cross-examination of the witness himself or a character witness." 1 Henry Brandis, Jr., *Brandis on North Carolina*

*Evidence* §§ 107, 115 (1988). An exception to this general rule occurs when the character of a witness is directly in issue (*i.e.*, is an essential element of a charge, claim, or defense), such as "the competency of the driver in an action for negligently entrusting a motor vehicle to an incompetent driver." *See* N.C.G.S. § 8C-1, Rule 404 (1992), Official Commentary. In such a case, relevant specific act evidence is admissible as provided by Rule 405(b). Because Christina's character for truthfulness was not "in issue" in defendant's trial, and because the specific instances of Christina's conduct which illustrated Christina's character for truthfulness were related on direct examination of Christina's teacher by the State, under our Rules of Evidence, such testimony should not have been admitted. *See State v. Hewett*, 93 N.C. App. 1, 15-16, 376 S.E.2d 467, 476 (1989). Accordingly, the trial court erred in overruling defendant's objection.

### III

**[3]** Defendant argues that the admission of the aforementioned evidence constitutes prejudicial error thereby entitling him to a new trial. We agree.

To establish prejudicial error, a defendant must show that there is a reasonable possibility that, had the error or errors in question not been committed, a different result would have been reached at trial. N.C.G.S. § 15A-1443(a) (1988). In the instant case, the prosecuting witness was a nine-year-old child with an IQ of forty-eight. Significantly, a medical examination performed by Dr. Brna on 14 July 1990, immediately following Christina's assertion that defendant had placed his penis in her rectum and "made it bleed," revealed no evidence of either vaginal or rectal penetration. A subsequent genital examination performed by Dr. Everett on 31 July 1990 revealed no abnormal rectal findings, although Dr. Everett testified that, in her opinion, Christina had been "sexually abused." In light of this conflicting testimony, we must conclude that there is a reasonable possibility that, had the trial court not improperly admitted testimony from two witnesses, one an expert, tending to establish Christina's veracity, the jury would have reached a different result. Accordingly, defendant is entitled to a

New trial.

Judge WYNN concurs.

STATE v. BAYMON

[108 N.C. App. 476 (1993)]

Judge WALKER dissents with separate opinion.

Judge WALKER dissenting.

The majority concludes that Dr. Everett's statements that she had "not picked up on anything" to suggest that someone had "coached" Christina were inadmissible because they related directly to Christina's credibility. I believe, however, that there is a distinction between testimony from a witness such as Dr. Everett that a child victim was truthful or untruthful, which is inadmissible, and testimony that the expert discerned no evidence that the child had been "coached." In this case, Dr. Everett's testimony concerned the question of whether, in her opinion, there was any evidence that some individual might have told Christina what to say. In my opinion, the fact that a child may have been "coached" does not necessarily indicate that the child was more or less truthful pursuant to the instructions of that "coach," but a child such as Christina who is knowledgeable of the difference between the truth and a lie may speak truthfully or untruthfully of her own volition. Thus, I cannot conclude that these statements by Dr. Everett related directly to Christina's credibility. Additionally, Dr. Everett had been extensively cross-examined by defendant and the responses here were on redirect examination. In any event, I find no prejudicial error and would uphold the trial court's admission of these statements into evidence.

Additionally, the majority holds that the trial court erred in allowing Christina's teacher, Susan Everett, to testify as to specific instances of Christina's conduct, which it concludes tended to establish Christina's truthfulness. Ms. Everett testified over defendant's objections:

Q. Have you had an opportunity to, during the course of a year, to observe her in terms of relating factual happenings to you?

. . . .

A. There have been many times we talk a lot about what we do over the weekends, they relate things to me, and she would come and say things like she had been to church, and in a couple of weeks, she'd come and she would be singing a song I know she had learned in church, so I knew she hadn't made that up.

She might would come she had been shopping. She'd have on some new clothes so I knew that it was true.

She could go outside, they go outside with my assistant, and she could come in and tell me things that went on and I know that they are true.

I have never had any reason to doubt that what she tells me is not true.

In the context of this question, I do not agree that Ms. Everett's testimony constituted specific instances of Christina's conduct elicited for the purpose of bolstering Christina's credibility, in violation of Rule 608, North Carolina Rules of Evidence. The question posed to Ms. Everett made no reference to Christina's veracity and did not seek Ms. Everett's opinion on this matter. Instead, I find Ms. Everett's testimony to bear more directly on Christina's ability to communicate and her level of understanding, not her veracity. The instances recited by Ms. Everett were given as examples in order for her to better explain Christina's ability to communicate with and understand others, and as evidence that Christina functioned better than her I.Q. of forty-eight would indicate, all of which were in issue and highly relevant since Christina is classified as mentally handicapped.

Therefore, having concluded there was no prejudicial error in the trial court's admission of this testimony, I dissent.