STATE OF NORTH CAROLINA v. ROBERT JAMES BAYMON

No. 25A93

(Filed 29 July 1994)

1. **Evidence and Witnesses § 2332 (NCI4th) — child sexual abuse — expert testimony — coaching of child — redirect examination — no error**

The trial court did not err in a prosecution for rape and sexual offenses against a nine-year-old child by allowing Dr. Everett, an expert in pediatric medicine and child sexual abuse, to testify on redirect examination that she had not picked up on anything to suggest that someone had told the victim what to say or that the victim had been coached. Although an expert witness may not testify that the prosecuting child-witness in a sexual abuse trial is believable or that the child is not lying about the alleged sexual assault, defense counsel on cross-examination attempted to leave the impression that the victim had been coached by her relatives or social workers involved in the case and opened the door for the State on redirect to proffer Dr. Everett's testimony that she did not perceive that the victim had been told what to say or had been coached.

**Am Jur 2d, Expert and Opinion Evidence § 191.**

**Necessity and admissibility of expert testimony as to credibility of witness. 20 ALR3d 684.**

STATE v. BAYMON

[336 N.C. 748 (1994)]

2. **Evidence and Witnesses §§ 2972, 3158 (NCI4th) — child sexual abuse — specific acts of truthfulness — testimony of victim's teacher**

There was prejudicial error in a prosecution for rape and sexual offenses against a child where the child's teacher testified to specific acts of the child which were indicative of truthfulness. The testimony was improperly offered to show the victim's truthfulness in the past in order to suggest that she was being truthful concerning the subject matter of the charges against defendant and was prejudicial in light of the conflicting medical testimony. N.C.G.S. § 8C-1, Rule 608.

**Am Jur 2d, Witnesses §§ 895 et seq.**

**Construction and application of Rule 608(b) of Federal Rules of Evidence dealing with use of specific instances of conduct to attack or support credibility. 36 ALR Fed. 564.**

3. **Criminal Law § 425 (NCI4th) — child sexual abuse — prosecutor's argument — number of incidents — lack of defendant's testimony**

There was prejudicial error in a prosecution for rape and sexual offense against a child from a prosecutor's argument that defendant knew how many times the child was sexually assaulted but wasn't telling. Defendant was charged with two counts of first-degree sexual offense and two counts of first-degree rape, so that an essential element of the State's case was the number of occasions defendant sexually assaulted the victim, the argument was a direct reference to defendant's failure to testify, and the argument was obviously intended to disparage defendant in the eyes of the jury for failing to testify.

**Am Jur 2d, Trial § 590.**

4. **Evidence and Witnesses § 1730 (NCI4th) — child sexual abuse — videotape of interview with counselor — admissible**

The trial court did not err in a prosecution for rape and sexual offense against a child in admitting into evidence a videotaped interview between the victim and a counselor where the counselor was deceased at the time of trial. The statements were not offered to prove that defendant sexually assaulted the victim, but rather to show that the victim had made a similar consistent statement; the counselor did not make any statement or give any testimony in the videotaped interview,

but merely asked questions of the victim to obtain a case history preliminary to the physical examination; and the victim testified concerning the subjects covered in the interview and defendant had ample opportunity to cross-examine her.

**Am Jur 2d, Evidence § 979.**

**Admissibility of videotape film in evidence in criminal trial. 60 ALR3d 333.**

Justice MEYER concurring in result.

Appeals by the State and defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 108 N.C. App. 476, 424 S.E.2d 141 (1993), which vacated judgments entered by Butterfield, J., at the 19 March 1991 Criminal Session of Superior Court, Wilson County, and granted defendant a new trial. Defendant's petition for discretionary review of additional issues not determined by the Court of Appeals was allowed on 6 May 1993. Heard in the Supreme Court 16 November 1993.

*Michael F. Easley, Attorney General, by Robert J. Blum, Special Deputy Attorney General, for the State.*

*W. Earl Taylor, Jr. for defendant.*

PARKER, Justice.

Defendant, upon proper bills of indictment, was convicted of two counts of first-degree statutory rape and two counts of first-degree statutory sexual offense in violation of N.C.G.S. § 14-27.2 and N.C.G.S. § 14-27.4, respectively. The trial judge entered judgment and imposed four life sentences. On defendant's appeal, the Court of Appeals found reversible error. The State appealed to this Court as a matter of right based on the dissent below, and defendant filed a notice of appeal and a petition for discretionary review on two issues not determined by the Court of Appeals. The State's motion to dismiss defendant's appeal was denied and defendant's petition for discretionary review was allowed by this Court on 6 May 1993.

In brief, the record reflects that the female victim was nine years old at the time of the trial. She testified that defendant was in her home on several occasions while her mother was at work. On these occasions, defendant sent the other children

outside to play but forced the victim to remain inside with him. Using anatomically correct dolls, the child specifically testified to two episodes of sexual intercourse, both anal and vaginal, and alluded to numerous others. She stated that "[h]e stuck his ding-dong in me; kissed me all over." On at least one occasion, he beat her with a belt. She further testified she did not tell anyone what had happened to her because she was afraid defendant would beat her again. However, on 13 July 1990, following the second specific occasion of vaginal and anal penetration, the child, while visiting at her cousin's ("Aunt" Kell's) house nearby, bled in the commode. When questioned, the child told her cousin what defendant had been doing to her. The next day the victim told another cousin ("Aunt" Pearl) a similar story.

The State's evidence included the testimony of the victim's cousins; two social workers from the Wilson County Department of Social Services; a child therapist; the police detective who investigated the charges; the victim's schoolteacher; and two medical experts, Dr. Theodore George Brna and Dr. Vivian Denise Everett.

Dr. Brna testified that he examined the victim on 14 July 1990 and performed both a vaginal and rectal examination. He did not observe any secretions or tears in the vaginal area or any external tears, bruises, or lacerations in the rectal area, though he did observe redness around the urinary opening. He testified that he saw no evidence of sexual abuse in the victim's rectal area, and in his medical opinion, no penetration of the victim's vagina had occurred.

Dr. Everett, who was director of the child sexual abuse team at Wake Memorial Hospital, examined the victim on 31 July 1990. Prior to Dr. Everett's examination, Kimberly Crews, a counselor on the team, interviewed the victim. This interview was videotaped, and Dr. Everett discussed the interview with the counselor before examining the victim. Dr. Everett testified that the opening in the victim's hymen measured six millimeters, larger than was usual for a child the victim's age. To Dr. Everett this finding was a strong indicator of sexual abuse. Dr. Everett further testified that she did not find tears or lacerations in either the vaginal or rectal area, but did not consider it unusual not to observe tears and lacerations because of the healing powers of both the hymen and rectal tissue. In Dr. Everett's opinion, the interview and her examination were consistent with sexual abuse.

STATE v. BAYMON

[336 N.C. 748 (1994)]

[1] Before the Court of Appeals, defendant argued, and the majority of the panel agreed, that the trial court erred in allowing, over objection, certain testimony by Dr. Everett on redirect examination. We agree with the State that under the circumstances admission of the testimony was not error.

Dr. Everett was qualified as an expert witness in the fields of pediatric medicine and child sexual abuse. On direct examination Dr. Everett testified that the basis of her opinion was her physical examination of the victim and her review of the videotaped interview between the victim and the counselor. On redirect examination, after strenuous cross-examination, Dr. Everett testified that she had not picked up on anything to suggest that someone had told the victim what to say or that the victim had been coached. Relying on *State v. Oliver*, 85 N.C. App. 1, 11, 354 S.E.2d 527, 533, *disc. rev. denied*, 320 N.C. 174, 358 S.E.2d 64 (1987), the Court of Appeals ruled that "an expert witness may not testify regarding the veracity of the prosecuting child witness in a sexual abuse trial." *State v. Baymon*, 108 N.C. App. 476, 482, 424 S.E.2d 141, 144 (1993). The court held that the challenged testimony was a comment on the victim's credibility and was thus inadmissible.

In a dissenting opinion Judge Walker opined that "there is a distinction between testimony from a witness such as Dr. Everett that a child victim was truthful or untruthful, which is inadmissible, and testimony that the expert discerned no evidence that the child had been 'coached.'" *Baymon*, 108 N.C. App. at 485, 424 S.E.2d at 146. On appeal the State argues the correctness of the dissent's position that a statement that a child was not coached is not a statement on the child's truthfulness. The State further contends that defendant's cross-examination of Dr. Everett opened the door for the challenged testimony on redirect. We agree.

This Court has held that under Rules 405 and 608 of the North Carolina Rules of Evidence, an expert witness may not testify that the prosecuting child-witness in a sexual abuse trial is believable, *State v. Aguallo*, 318 N.C. 590, 350 S.E.2d 76 (1986), or that the child is not lying about the alleged sexual assault, *State v. Heath*, 316 N.C. 337, 341 S.E.2d 565 (1986). Under certain circumstances, however, otherwise inadmissible evidence may be admissible if the door has been opened by the opposing party's cross-examination of the witness. "Opening the door refers to the principle that where one party introduces evidence of a particular fact, the opposing

party is entitled to introduce evidence in explanation or rebuttal thereof, even though the rebuttal evidence would be incompetent or irrelevant had it been offered initially." *State v. Sexton*, 336 N.C. 321, 360, 444 S.E.2d 879, 901 (citing *State v. Rose*, 335 N.C. 301, 337, 439 S.E.2d 518, 538, *cert. denied*, --- U.S. ---, 129 L. Ed. 2d 883 (1994)) *petition for cert. filed*, (U.S Oct. 5, 1994), (No. 94-6384).

During the cross-examination of Dr. Everett, defense counsel conducted the following colloquy:

Q. Dr. Everett, you were talking about how children know various things.

One way children know things or what they are told by adults, isn't it?

A. That's possible.

Q. And children often learn—that's why they go to school to be taught by adults, isn't it?

A. That's correct.

Q. That's a common learning method by children to be told by adults?

A. They may be told things but their ability to relate what they have learned in that manner would be different.

Q. And, the more times they are told that, the easier they have to retain that information, isn't it?

A. Not necessarily so.

I mean that's possible, but again, when the interviews are conducted, they are conducted in such a way as to pick up on that possibility.

Q. But you weren't present when the interview was done?

A. No. I wasn't present when the interview was done.

Q. You don't have any idea what her Aunt Pearl had told her before she was examined, do you?

A. No, I don't know what her Aunt had told her.

Q. You don't know what Aunt Kell had told her, do you?

A. No. I just know what the interview between she and Ms. Crews.

Q. And you don't have any idea how many people she had told this story to before Ms. Crews interviewed her, do you?

A. No, I don't.

Q. But you are aware that there was a lot of involvement by social services?

A. There was a social worker involved in the case.

Q. And, did you view the interview by Ms. Crews as part of the basis of forming your opinions?

A. Yes.

Q. So, you used what [the victim] said as part of the basis to form your opinions?

A. Well, following the interview, Ms. Crews discussed the interview with me and informed me of what [the victim] had said to her just prior to my doing the physical exam.

Q. And, that was part of the basis for your examination was what [the victim] actually said?

A. That is correct. The history obtained.

Through this line of questioning, defense counsel, in an effort to undermine Dr. Everett's credibility, particularly her reliance on the history given by the victim in the videotaped interview, attempted to leave the impression that the victim had been coached by her relatives or social workers involved in the case. This attempt opened the door for the State on redirect to reestablish the reliability of the videotaped interview by proffering Dr. Everett's testimony that she did not perceive that the victim had been told what to say or coached.

The purpose of redirect examination is to clarify any questions raised on cross-examination concerning the subject matter of direct examination and to confront any new matters which arose during cross-examination. State v. Price, 301 N.C. 437, 452, 272 S.E.2d 103, 113 (1980).

STATE v. BAYMON

[336 N.C. 748 (1994)]

Our Court has long recognized that

[a] party cannot be allowed to impeach a witness on the cross-examination by calling out evidence culpatory of himself and there stop, leaving the opposing party without opportunity to have the witness explain his conduct, and thus place it in an unobjectionable light if he can. In such case the opposing party has the right to such explanation, even though it may affect adversely the party who cross-examined. Upon the examination in chief, the evidence may not be competent, but the cross-examination may make it so.

*State v. Glenn*, 95 N.C. 677, 679 (1886). *See also State v. Cates*, 293 N.C. 462, 470-71, 238 S.E.2d 465, 471 (1977); *State v. Patterson*, 284 N.C. 190, 196, 200 S.E.2d 16, 20 (1973). We hold that defendant's cross-examination of Dr. Everett rendered the challenged testimony admissible on redirect examination. Accordingly, the Court of Appeals erred on this issue.

[2] The State also contends the Court of Appeals erred in holding that the trial court erred by allowing certain testimony from Susan Everett, the victim's schoolteacher. During direct examination by the State, Ms. Everett testified that the victim had an IQ of forty-eight and was in a special class for the "educable mentally handicapped." When asked if she had the opportunity "to observe [the victim] in terms of relating factual happenings," Ms. Everett responded that the children often related things to her. The victim "would come and say things like she had been to church, and in a couple of weeks, she'd come and she would be singing a song I know she had learned in church, so I knew she hadn't made that up." Ms. Everett also stated that the victim might mention that she had been shopping and later "[s]he'd have on some new clothes so I knew that it was true. . . . I have never had any reason to doubt that what she tells me is not true." The Court of Appeals ruled that the testimony as to these specific instances of conduct was improper under Rule 608(b) of the North Carolina Rules of Evidence. We agree.

The rule in question provides in part:

(a) *Opinion and reputation evidence of character.* — The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion as provided in Rule 405(a), but subject to these limitations: (1) the evidence

STATE v. BAYMON

[336 N.C. 748 (1994)]

may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b) *Specific instances of conduct.*—Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

N.C.G.S. § 8C-1, Rule 608(a), (b) (1992).

Under this rule direct examination of a witness concerning specific instances of conduct pertaining to a witness' character for truthfulness or untruthfulness is prohibited. Rather, as Rule 405(a) provides: "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct." N.C.G.S. § 8C-1, Rule 405(a) (1992). As the Court of Appeals properly noted, specific instances of conduct are admissible to prove character or a trait of character only when the "character or a trait of character of a person is an essential element of a charge, claim, or defense." N.C.G.S. § 8C-1, Rule 405(b) (1992). *State v. Baymon*, 108 N.C. App. at 484, 424 S.E.2d at 145.

In the present case we agree with the Court of Appeals that Ms. Everett's testimony during direct examination by the State was improperly offered to show the victim's truthfulness in the past in order to suggest that she was being truthful concerning the subject matter of the charges against defendant. Ms. Everett testified to specific acts of the child which were indicative of truthfulness; she did not state whether she had an opinion as to the victim's character for truthfulness or whether she knew of the victim's reputation for truthfulness. The victim's character for truthfulness or lack thereof was not at issue. Even if the purpose of the inquiry was, as the State contends, to show the victim's ability to relate factual happenings and to communicate, the witness'

responses were beyond the scope of the question and directed to truthfulness. We also agree with the Court of Appeals' analysis that the error was prejudicial in light of the conflicting medical testimony. In child sexual abuse cases where the medical evidence is in conflict the victim's credibility is critical. Given this evidence, defendant has met his burden of showing that the error was prejudicial under the standard in N.C.G.S. § 15A-1443(a). On the record before us we cannot conclude as a matter of law that there was no reasonable possibility that the jury would have reached a different result had the improperly admitted testimony by a teacher concerning the child's veracity not been admitted. N.C.G.S. § 15A-1443(a) (1988). This testimony was offered to show that the victim was being truthful on this occasion and was thus prejudicial. Accordingly, we agree with that portion of the opinion of the court below finding error in the trial court's admission of Ms. Everett's testimony during direct examination as to prior occasions when the victim was truthful. For this reason defendant is entitled to a new trial.

[3] On discretionary review of defendant's issues, defendant first contends the trial court erred in failing to grant his request for a mistrial based on the district attorney's comments during closing argument. We agree and hold that this error also entitles defendant to a new trial.

The prosecutor's closing argument was not transcribed, and the trial judge was out of the courtroom when defendant's objection was raised. When the judge returned to the courtroom, he asked both counsel to reduce to writing their immediate recollection of the objectionable portion of the closing argument. The court overruled defendant's objection and denied defendant's motion for mistrial. The judge also did not give any curative instruction at that point in the prosecutor's argument, though he did give an instruction in the charge to the jury. Each attorney was later given the opportunity to read his notes into the record.

Defense counsel's recollection was that the prosecutor stated, "[W]e don't know how many times but the defendant knows and he's not going to tell you; he doesn't have to tell you." The prosecutor's recollection was that he stated, "We don't know how many times the child was . . . sexually [assaulted or abused]. . . . The defendant knows, but he's not going to tell you."

STATE v. BAYMON

[336 N.C. 748 (1994)]

A criminal defendant may not be compelled to testify, and any reference by the State regarding his failure to testify is violative of his constitutional right to remain silent. *Griffin v. California,* 380 U.S. 609, 14 L. Ed. 2d 106, *reh'g denied,* 381 U.S. 957, 14 L. Ed. 2d 730 (1965).

When the State directly comments on a defendant's failure to testify, the improper comment is not cured by subsequent inclusion in the jury charge of an instruction on a defendant's right not to testify. Rather,

this Court has held the error may be cured by a withdrawal of the remark or by a statement from the court that it was improper, followed by an instruction to the jury not to consider the failure of the accused to offer himself as a witness.

We consistently have held that when the trial court fails to give a curative instruction to the jury concerning the prosecution's improper comment on a defendant's failure to testify, the prejudicial effect of such an uncured, improper reference mandates the granting of a new trial.

*State v. Reid,* 334 N.C. 551, 556, 434 S.E.2d 193, 197 (1993) (quoting *State v. McCall,* 286 N.C. 472, 487, 212 S.E.2d 132, 141 (1975)) (citations omitted).

In the present case defendant was charged with two counts of first-degree sexual offense and two counts of first-degree rape. Hence an essential element of the State's case against defendant was the number of occasions defendant sexually assaulted the victim. The implication left by the prosecutor's argument was that defendant knows he is guilty of these and perhaps of more assaults, but he is hiding behind his right not to take the stand to avoid admitting it so the jury must decide how many assaults actually occurred. Construed in the light most favorable to the State both versions of the prosecutor's closing argument were direct references to defendant's failure to testify. The comment was obviously intended to disparage defendant in the eyes of the jury for failing to testify. Under the language in *Reid,* the trial court's failure to give a curative instruction was error requiring a new trial unless the State can show that the error was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988). The State has failed to make any showing that the error was harmless beyond a reasonable

doubt. Considering all the evidence including the conflicting expert medical testimony, we cannot conclude that defendant was not prejudiced by the comment.

[4] Defendant also asserts that the trial court erred in admitting into evidence the videotaped interview between the victim and Kimberly Crews, the counselor, which defendant contends was inadmissible hearsay. Relying on *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597 (1980), and *State v. Smith*, 291 N.C. 505, 231 S.E.2d 663 (1977), defendant argues that the videotape stripped him of his constitutional right to confront Ms. Crews, who was deceased at the time of trial.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee to defendant the right to a full and fair cross-examination of witnesses testifying against him in a criminal prosecution. *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597. Nevertheless, this Court has recognized the use of previously recorded testimony if certain criteria are met. Videotaped testimony is admissible

> if it [can] be shown that: (1) The witness is unavailable; (2) the proceedings at which the testimony was given was a former trial of the same cause, or a preliminary stage of the same cause, or the trial of another cause involving the issue and subject matter at which the testimony is directed; and (3) the current defendants were present at that time and represented by counsel.

*Smith*, 291 N.C. at 524, 231 S.E.2d at 675. "The justification for this exception is that the defendant's right of confrontation is adequately protected by the opportunity to cross-examine afforded at the initial proceeding." *State v. Graham*, 303 N.C. 521, 523, 279 S.E.2d 588, 590 (1981).

Defendant's reliance on *Smith* to support his argument that his Sixth Amendment right to confrontation was violated is misplaced. A defendant's right to confrontation is not implicated unless the challenged statement comes within the definition of hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c). The videotape was offered and accepted by the court as corroboration of the victim's testimony.

Contrary to defendant's argument, the victim's statements on the video were not hearsay. The statements were not offered to prove that defendant sexually assaulted the victim, but rather to show that the victim had made a similar, consistent statement to Ms. Crews. *See State v. Riddle,* 316 N.C. 152, 340 S.E.2d 75 (1986). Ms. Crews did not make any statement or give any testimony in the videotaped interview; she merely asked questions of the victim to obtain a case history preliminary to Dr. Everett's physical examination of the victim. Hence, Ms. Crews' availability at trial was immaterial. At trial the victim testified concerning the subjects covered in the interview, and defendant had ample opportunity to cross-examine her. We conclude, therefore, that the trial court did not err by admitting the videotape into evidence.

For the foregoing reasons, rather than those stated by the Court of Appeals, we affirm the decision of the Court of Appeals which awarded defendant a new trial. This case is remanded to the Court of Appeals for its further remand to the Superior Court, Wilson County, for proceedings not inconsistent with this opinion.

AFFIRMED.

Justice MEYER concurring in result.

The majority holds that the testimony of Susan Everett, the victim's schoolteacher, was impermissible as it improperly referred to specific acts of the victim to establish the victim's truthfulness in the past to show that she was being truthful about the charges against defendant. I disagree.

The defendant had earlier questioned witnesses about the victim's level of intelligence, and the jury was aware that the victim had an IQ of 48. The prosecutor asked Susan Everett if she "had an opportunity . . . , during the course of a year, to observe her [the victim] in terms of relating factual happenings to you [Ms. Everett]." Ms. Everett responded:

There have been many times we talk a lot about what we do over the weekends, they relate things to me, and she would come and say things like she had been to church, and in a couple of weeks, she'd come and she would be singing a song I know she had learned in church, so I knew she hadn't made that up.

STATE v. BAYMON

[336 N.C. 748 (1994)]

She might would come [sic] she had been shopping. She'd have on some new clothes so I knew that it was true.

She could go outside, they go outside with my assistant, and she could come in and tell me things that went on and I know that they are true.

In addition, Ms. Everett also noted, when answering that question, that she would always pick the victim to run errands to the library or office because the victim had "always been very reliable." The prosecutor then asked if the victim ever got "confused, mixed up with errands or messages." Ms. Everett responded "no."

I agree with Judge Walker that Susan Everett's testimony bore more directly on the victim's ability to communicate, her level of understanding, and her ability to take on responsibility, than on her veracity. *State v. Baymon*, 108 N.C. App. 476, 485-86, 424 S.E.2d 141, 146-47 (1993). Such testimony was relevant to illustrate the victim's ability to communicate and function in society in spite of her low IQ and resulting mental handicap, which were repeatedly stressed by the defendant. The child's capacity to communicate and describe things as they actually happened in her life had been repeatedly attacked by defense counsel. The State should have been allowed to present evidence that, even in light of the victim's mental handicap, she was able to communicate about things that happened in her life.

I conclude that the testimony was not evidence of specific acts of conduct indicating the victim's truthfulness and was not in violation of Rule 608(a) or (b) of the North Carolina Rules of Evidence. N.C.G.S. § 8C-1, Rule 608(a), (b) (1992). Therefore, I conclude that the trial court did not err in allowing the testimony into evidence.

However, because I agree that the trial court erred in overruling defendant's objection to the prosecutor's comments referring to the fact that defendant did not testify, defendant is entitled to a new trial.