STATE OF NORTH CAROLINA v. DALE THOMAS RIDDLE

No. 710A84

(Filed 5 March 1986)

**1. Criminal Law § 89.2— rape victim—corroborative evidence admissible**

In a prosecution for first degree rape and incest, the trial court did not err in allowing a protective services worker who interviewed the victim to testify as to the victim's statement that her sister had asked her to say that she had made up the accusation against defendant, since defendant objected to the question posed to the witness but did not move to strike her answer; the testimony was admissible on the ground that it tended to corroborate the victim's earlier testimony; the testimony was not inadmissible hearsay in that it was not offered to prove the truth of the matter asserted (that the sister had asked the victim to say that she fabricated the incident), but was offered merely to prove that the victim had made a statement to this effect to the witness; the fact that the testimony might also tend to impugn the credibility of a prospective defense witness, the victim's sister, did not render it inadmissible; and the trial court properly instructed that the testimony could only be considered for the purpose of corroborating the victim's testimony.

**2. Criminal Law § 85.3— misconduct of defendant—cross-examination proper**

Where defendant testified that he had tried to prevent his daughter from seeing two of her friends on the ground that they were not "decent" people, the prosecutor's question addressed to defendant on cross-examination that ". . . you beat your wife, and you tried to cheat on your wife, and you are calling these people not decent?" did not constitute plain error, since defendant testified that he had beaten his wife during the early years of their marriage and admitted that he had asked a neighbor for a date while married, and the record did not indicate that the jury would have reached a different result had the exchange in question not taken place.

BEFORE *Collier, J.,* at the 5 November 1984 Mixed Session of Superior Court, DAVIE County, defendant was convicted of first-degree rape and incest. The convictions were consolidated for the purpose of judgment, and the defendant was sentenced to a term of life imprisonment. The defendant appeals as a matter of right pursuant to N.C.G.S. § 7A-27(a). Heard in the Supreme Court 21 November 1985.

*Lacy H. Thornburg, Attorney General, by Steven Mansfield Shaber, Assistant Attorney General, and Catherine McLamb, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by David W. Dorey, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

The State's evidence tended to show that the defendant is the father of Pamela Riddle. On 3 August 1984, fourteen-year-old Pamela was living in a mobile home with the defendant, her mother, her brother, and her brother's fiancee. Pamela testified that early in the morning on 3 August 1984, while she was watching television, the defendant approached her and asked her to go to bed with him. She refused and ran out of the living room. The defendant chased after her. Pamela attempted to get out of the mobile home; however, both doors were locked. She then ran into the bathroom which was adjacent to her bedroom and locked the door.

Pamela further testified that the defendant managed to unlock the bathroom door and then forced her into his bedroom. When she refused his order to get on the bed, the defendant pulled out a pocketknife, opened it, and held it to her throat. Pam-

ela stated that she then got on the bed. While continuing to hold the knife to her throat, the defendant proceeded to engage in vaginal intercourse with Pamela. Pamela testified that the defendant threatened to kill her if she reported the incident to anyone. Pamela also testified that the defendant wore a prophylactic during intercourse.

On cross-examination, Pamela testified that her father was strict with her and would at times forbid her from visiting certain friends. Pamela also admitted that occasionally she forged her parents' signatures to notes purporting to excuse school absences.

Elsie James, a neighbor of the Riddles, testified for the State. She testified that Pamela came to her house on 6 August 1984 and stated that the defendant had engaged in sex with her.

The State also presented the testimony of Amy Collins, a protective services worker with the Davie County Department of Social Services. Collins testified that she interviewed Pamela on 8 August 1984. During the interview, Pamela told Collins that her father had forced her to engage in sexual intercourse with him on 3 August 1984. Collins further testified that Pamela said her father used a pocketknife to carry out the act.

Detective P. C. Williams of the Davie County Sheriff's Department testified that he met with Pamela on 8 August 1984. At that time, Pamela gave a statement regarding the defendant's actions on the morning of 3 August 1984. This statement, which was substantially in accord with Pamela's testimony at trial, was read to the jury. Williams also testified that on 9 August 1984, the defendant's wife gave him permission to conduct a search of the mobile home. As a result of the search, Williams found two empty prophylactic packages; one in a kitchen trash can, the other in a pocket of a coat located in defendant's bedroom.

Betty Riddle, Pamela's mother, was called as a witness by the State. She testified that the defendant had a bad temper and had on previous occasions spanked Pamela. Mrs. Riddle also said that the defendant had beaten her (Mrs. Riddle) during the early years of their marriage. Mrs. Riddle further testified that she had undergone a partial hysterectomy six years earlier, and as a consequence there was no need for defendant to use prophylactics when they engaged in intercourse. She also stated that she and

her husband had been having sexual problems near the time of the alleged incident. Mrs. Riddle testified that, on several occasions, Pamela had told her that she was telling the truth about the incident.

Mark Riddle, Pamela's sixteen-year-old brother, was called as a witness by the State. He testified that he was living with his parents in August 1984 and was in the mobile home on the morning of 3 August 1984. Mark testified that his bedroom was directly adjacent to his parents' bedroom. He stated that he heard nothing unusual that morning prior to being awakened by his father at approximately 8:00 a.m. Mark denied having any prophylactics in the mobile home at that time.

Lisa Riddle, Pamela's eighteen-year-old sister, testified for the defendant. She stated that Pamela had expressed a desire to live away from home due in part to the fact that she was required to adhere to strict rules of behavior which were imposed by her parents. Lisa testified that she had spoken with Pamela on several occasions after charges were brought against their father. Lisa said that, during one of these conversations, Pamela asked, "Could they do anything to me if they found out I was lying?" Lisa testified that on another occasion Pamela told her to "[t]ell daddy I am going to tell everybody that I have been lying." Lisa also said that Pamela had a history of telling lies. On cross-examination, Lisa denied that she had ever told Pamela that she did not want her to testify against the defendant.

Teresa Riddle, Pamela's sister-in-law, testified that, a few days prior to 3 August, Pamela told her that she was planning to go to the Department of Social Services to see if she could be placed in a foster home. Teresa stated that Pamela expressed a great deal of dissatisfaction with the restrictions that her parents placed on her.

Evalina Campbell, Betty Riddle's aunt, testified that sometime after 3 August, she and her husband were helping Mrs. Riddle clean up the Riddle's mobile home. She stated that, at that time, she found a package of prophylactics under Mark Riddle's bed and put it in a trash can.

The defendant took the stand in his own behalf. He denied having ever engaged in any type of sexual activity with Pamela or having displayed a knife in her presence.

Based on this and other evidence, the jury found the defendant guilty of first-degree rape and incest.

[1]  The defendant's first assignment of error concerns certain testimony given by Amy Collins, the protective services worker who interviewed Pamela Riddle. Collins testified after Pamela had testified. During direct examination, Collins was asked if Pamela had told her about any conversations that she had had with her sister, Lisa. Collins stated that Pamela had told her "[t]hat she [Lisa] wanted her [Pamela] to say that she [Pamela] had made it [the accusation against defendant] up." The defendant argues that the admission of this testimony constitutes reversible error.

We note initially that defense counsel objected to the question posed to Ms. Collins but did not move to strike her answer. The defendant suggests that the question asked of Ms. Collins anticipated or suggested that the answer would be inadmissible, and therefore his objection was sufficient and alone preserved the issue for appellate review. We disagree. Where inadmissibility of the answer is not indicated or suggested by the question, but becomes apparent by some feature of the answer, the objection should be made as soon as the inadmissibility becomes known and should be in the form of a motion to strike out the answer or the objectionable part of it. 1 Brandis on North Carolina Evidence § 27 (2d rev. ed. 1982). Thus, even assuming, *arguendo*, that the answer was not corroborative, the defendant's failure to move to strike it waived his objection. We conclude, however, that the question anticipated an answer that would have been fully corroborative of Pamela's prior testimony, i.e., that Pamela told Ms. Collins that her sister, Lisa, had asked her to say that what she had accused her father of doing was not true or to say that she "made up" the story.

The prosecution contended at trial that this testimony was admissible on the ground that it tended to corroborate Pamela's earlier testimony. The trial court allowed the testimony to be introduced for purposes of corroborating Pamela's testimony and specifically instructed the jury that the evidence was only to be considered for that purpose.

Corroboration is "the process of persuading the trier of the facts that a witness is credible." 1 Brandis on North Carolina

Evidence § 49 (2d rev. ed. 1982). We have defined "corroborate" as "to strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." *State v. Higginbottom*, 312 N.C. 760, 769, 324 S.E. 2d 834, 840 (1985). Prior consistent statements of a witness are admissible as corroborative evidence even when the witness has not been impeached. *State v. Martin*, 309 N.C. 465, 308 S.E. 2d 277 (1983); *State v. Perry*, 298 N.C. 502, 259 S.E. 2d 496 (1979); *State v. Best*, 280 N.C. 413, 186 S.E. 2d 1 (1972). However, the prior statement must in fact corroborate the witness' testimony. *State v. Martin*, 309 N.C. 465, 308 S.E. 2d 277; *State v. Warren*, 289 N.C. 551, 223 S.E. 2d 317 (1976). Slight variations between the corroborating statement and the witness' testimony will not render the statement inadmissible. *State v. Adcock*, 310 N.C. 1, 310 S.E. 2d 587 (1984); *State v. Corbett*, 307 N.C. 169, 297 S.E. 2d 553 (1982); *State v. Britt*, 291 N.C. 528, 231 S.E. 2d 644 (1977).

. The defendant contends that Collins' testimony did not in fact corroborate Pamela's trial testimony. He claims that the portion of Pamela's testimony which Collins' testimony purportedly corroborated was contained in the following exchange between Pamela and the prosecutor on redirect examination:

Q: Have you spoken to her [Lisa], or had she spoken to you about this matter before?

A: What do you mean?

Q: I mean after the charges were taken out, have you spoken to Lisa either on the phone or in person or anything of that nature?

A: Yes, I talked to her.

Q: Has she indicated to you about what your testimony should be or should not be?

A: She just—all she said was that, "You are going to send daddy to prison". I said, "I didn't do it, he did".

Defendant argues that since this testimony contained no statement by Pamela that Lisa had asked her to say that she had fabricated the allegations, Collins' testimony could not have been corroborative and should have been excluded. We conclude, however, that the defendant has misapprehended the portion of

Pamela's testimony which Collins' testimony was meant to corroborate. During defense counsel's cross-examination of Pamela, the following exchange occurred:

Q: Okay, and tell us on one occasion did you not tell your sister that, "I already know what I am going to say, that I am going to get up and say that I was lying the first time this case was heard"?

A: No, we was talking, me and her [Lisa], and mama was talking about the case and everything; and she started saying some stuff. I can't remember now what it was, but I said, "All I ought to do now is just get up and say I was lying, right?"

Q: You didn't say it this way, that you indicated, "That I already know what I am going to say; that I am going to get up and say I was lying"?

A: (Nodded negatively.)

Q: Did you make another statment [sic], "I have already made up my mind that I am going to get on the stand and say that I have been lying about this", in front of your mother and sister?

A: No, that is when we was still talking about the case.

Q: Okay, and did you then say it that way?

A: I didn't say it that way.

By this cross-examination, the defense attempted to impeach Pamela's credibility by suggesting that she had made statements to Lisa which were inconsistent with her trial testimony, specifically that she had stated that she intended to testify that her accusations against defendant were false. Pamela denied this allegation, and her testimony carried the unmistakable impression that Lisa had asked her to say that she had fabricated the incident. This was the portion of Pamela's testimony which Collins' testimony was offered to corroborate. In neither Pamela's testimony nor in Ms. Collins' testimony is there a specific assertion that Lisa knew the truth and that she was asking Pamela to lie, although this assertion is implicit in both statements. We have previously recognized the importance that may attach to asser-

tions which are implicit in a witness' testimony in a criminal case. *E.g., State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981) (where witness' testimony clearly implied that evidence had undergone no material change since recovery, the failure of the witness to expressly so state does not render his identification testimony of the items inadmissible); *State v. Fletcher*, 279 N.C. 85, 181 S.E. 2d 405 (1971) (where defendant's testimony implied that he had met his codefendants by accident and that no plan or design to commit robbery could have existed, the prosecution could properly cross-examine the defendant to establish that he had met his codefendants in the Virginia State Penitentiary). We hold that Collins' testimony was properly admitted in corroboration of Pamela's trial testimony.

The defendant also contends that Collins' testimony was inadmissible hearsay. This argument is without merit. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (Cum. Supp. 1985). Collins' testimony was not offered to prove the truth of the matter asserted (that Lisa had asked Pamela to say that she had fabricated the incident), but was offered merely to prove that Pamela had made a statement to this effect to Collins. The testimony was therefore not objectionable on hearsay grounds.

The defendant also argues that Collins' testimony constituted an impermissible attempt to impeach the credibility of defense witness Lisa Riddle by accusing her of subornation of perjury. Defendant contends that this was improper due to the fact that the attempted impeachment occurred before Lisa testified. Assuming, *arguendo*, that this testimony did tend to impeach Lisa, defendant is entitled to no relief. Corroborative evidence is admissible as such notwithstanding the fact that it would otherwise be incompetent. *State v. Culbertson*, 6 N.C. App. 327, 170 S.E. 2d 125 (1969); *see also Woodard v. Mordecai*, 234 N.C. 463, 67 S.E. 2d 639 (1951). Since the testimony was properly admissible as corroborative evidence, the fact that it might also tend to impugn the credibility of a prospective defense witness will not render it inadmissible. Furthermore, we note that the trial judge explicitly instructed the jury that Collins' testimony could only be considered for the purpose of corroborating Pamela's testimony. In

light of this instruction, we feel that the impeaching effect of this testimony would have been minimal at best.

For the reasons stated above, we hold that the trial court did not err in permitting the State to introduce Collins' testimony regarding Pamela's statement. This assignment of error is over-ruled.

[2]    The defendant next argues that the trial court erred by failing to intervene *ex mero motu* in the face of grossly improper cross-examination of the defendant by the prosecution. We do not agree.

On direct examination, the defendant testified that he had tried to prevent Pamela from seeing two of her friends on the grounds that "they are not a decent-type person." The defendant also testified that he had beaten his wife during the early years of their marriage. On cross-examination, the defendant admitted having asked a neighbor for a date while married. The following exchange between the prosecutor and the defendant then took place:

Q: You indicated you didn't want your daughter messing around with the Dobbins girls because they were not decent people, is that correct?

A: That's right.

Q: And you beat your wife, and you tried to cheat on your wife, and you are calling these people not decent?

The defendant argues that this last question was irrelevant and was designed merely to appeal to the passions and prejudices of the jury.

The defendant failed to object to this question, and the objection is deemed waived pursuant to Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure. However, in *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983), we held that the "plain error" rule adopted in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983), regarding error in the jury instructions would be equally applicable to evidentiary matters. Assuming, *arguendo*, that this question was objectionable, it is clear that it did not constitute "plain error." With regard to the question of "plain error," we recently stated:

The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. *State v. Odom*, 307 N.C. at 661, 300 S.E. 2d at 378-79. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. *State v. Black*, 308 N.C. at 741, 303 S.E. 2d at 806-07.

*State v. Walker*, 316 N.C. 33, 39, 340 S.E. 2d 80, 83 (1986).

Our review of the whole record fails to convince us that this exchange caused the jury to reach a different verdict than would have been reached had the exchange not have occurred. This assignment of error is overruled.

The defendant received a fair trial, free from prejudicial error.

No error.