McCULLOUGH, Judge.
Defendants Ellis Tyrone Foreman and Markel Devon Braxton (collectively "defendants" and individually "defendant Foreman" and "codefendant Braxton") were tried during the 21 October 2002 Session of Beaufort County Criminal Court on indictments of first degree burglary and attempted first degree sexual offense. The State's evidence tended to show the following: The victim in this case, Ms. Kenya Smaw (the "victim"), and defendant Foreman, were at one time boyfriend and girlfriend. Their relationship had lastedapproximately three years. The victim ended her relationship with defendant Foreman a few days prior to the incident from which these criminal charges arose. After the break-up the victim had allowed defendant Foreman to use her key to go and get items he left at her house. As for codefendant Braxton, he and the victim had grown up together and were long-time friends.
On the evening of 1 October 2001, the victim had company over to her duplex. Defendants and a man by the name of Tony Sinclair were among the company. By 11:30 p.m., all the company had left. Staying with the victim on that night was her three-year-old daughter, and two other children ages six and five years old. They had been put to bed by the time the company left, and after checking on them the victim went to bed.
The victim testified that she woke up later that night because she could not breath. She felt a blanket around her head and her hands were tied. She could not move her feet or legs, and saw codefendant Braxton holding them down. She saw defendant Foreman when he attempted to cover her head with the blanket. Defendant Foreman then sat on top of her across her chest. Struggling, the victim began to bite and tried to get up. Defendant Foreman beat her as she struggled and made noise. At some point, the victim's noise woke up the six-year-old child who then came into the victim's bedroom. Codefendant Braxton took the six-year-old child back to where she had been sleeping, and returned to watch defendant Foreman. Defendant Foreman took a comb, and using the teeth, raked it across the victim's vagina, while codefendantBraxton held her hands against her chest. Foreman tried to insert the comb into her vagina, but was unable to due to the victim's struggle. Foreman continued beating her, calling her a whore and a bitch. When the victim asked codefendant Braxton for help, he did nothing to stop defendant Foreman or cut her loose, saying that it would be over soon. The victim testified that she had told codefendant Braxton's mother that in some strange way codefendant Braxton was attempting to comfort her. Defendant Foreman next turned the mattress over and stomped on the victim. He then went in her drawer, took out $25.00 dollars and some cigarettes, and then defendants left the duplex. The victim called the six-year-old child and asked her to go to the neighbors for help, and to cut the shoestrings off her wrists.
Patrol Corporal Christopher Latta with the Washington Police Department was the first to arrive at the duplex, dispatched on 2 October 2001 at 2:38 a.m. When he went in the victim's bedroom he saw the mattress turned over, shoestrings, and a belt at the end of the bed. He saw that the living room window was open and that the blinds were torn out and were outside on the ground.
Detective Stephen Waters with the Washington Police Department was called to the scene by Officer Latta to collect evidence. In the living room, he found that the screen was set in the window but not aligned in the frame, and the blinds from the window were outside on the ground; and in the victim's bedroom, he found several shoestrings, a shirt tied in a knot, and a belt. He interviewed the victim and took her statement. Staff nurse at the emergency room, Anita Woolard, observed and assisted the victim on the early morning of 2 October 2001. Nurse Woolard observed marks on her right wrist and raised welt marks on her left buttock. There were two minute superficial lacerations to her labia minora, the inner fold that leads to her vaginal area. One of these lacerations was one to two millimeters in length, and the other approximately four millimeters in length.
Defendants' evidence tended to show the following: Defendant Foreman was the boyfriend of the victim, and he often spent the night at her duplex. At times he had a key to her duplex and on a regular basis would go into her duplex to hang out. On 2 October 2001, he did not believe he and the victim were broken up.
He and codefendant Braxton were best friends and had gone to the victim's duplex on the night in question. They had been hanging out, drinking, and smoking marijuana with some of their friends and then left for the evening. They returned to the duplex to get something more to drink. Defendant Foreman opened the door with his key and went in the bedroom. He saw the victim there, lying asleep with Tony Sinclair. Defendant Foreman cursed and turned on the light. Codefendant Braxton heard this, ran back to the bedroom, and laughed at his friend. To this, defendant Foreman testified that he lost his temper and started beating the victim and calling her names. He then tied her with shoestrings and held her down with a sheet. Using a comb that was on the bed, he hit the victim's head, hands, arms, back, and ankles. She called out for help to codefendant Braxton who said, "I ain't got nothing to do with it." At one point during the beating, codefendant Braxton went into the bedroom across the hall to quiet the crying children. Defendant Foreman said he had given her $15-$20 earlier that day, and he went in her drawer to take it back. He testified he then took $2.00 that were lying on the floor. They then left.
Both defendants testified as to their criminal records.
Defendant Foreman was found guilty of non-felonious breaking or entering and attempted first degree sex offense. He received consecutive terms of imprisonment of 120 days and 251 to 311 months. Codefendant Braxton was found guilty of non-felonious breaking or entering and attempted second degree sex offense. He received consecutive terms of imprisonment of 120 days and 117 to 150 months.
On appeal defendants raise the following common issues: (I) the trial court prejudicially erred in abrogating its role of fairness and impartiality, by aiding the prosecution both inside and outside the presence of the jury; and (II) defendants were deprived their statutory right to discovery and constitutional right to due process, when the State failed to disclose the victim's medical report and the trial court allowed the testimony of the examining nurse. Additionally, defendant Foreman raises the following issues as to his charges: (I) the trial court prejudicially erred in failing to instruct on simple assault as a lesser included offense of first degree sexual offense; (II) the trial court prejudicially erred in admitting the testimony of Patrol Corporal Latta as his testimony was hearsay evidence; and(III) the trial court erred in denying defendant Foreman's motion to dismiss as the State lacked substantial evidence to sustain his conviction on both charges. Additionally, codefendant Braxton raises the following issues as to his charges: (I) the trial court prejudicially erred in finding that the six-year-old child was competent to testify without allowing cross-examination as to whether she had been coached; and (II) there was insufficient evidence that codefendant Braxton shared a common purpose with defendant Foreman to commit attempted second degree sexual offense based on the doctrine of "acting in concert."
We now turn to these issues.
Common Issues of Defendants
I. Trial Court's Comments
Defendants argue the trial court committed reversible error during the redirect examination of the victim by the State. During the redirect examination, the court told the prosecutor a specific question to ask the victim:
THE COURT: Redirect.
[THE STATE]: No redirect, Your Honor.
THE COURT: Well, then I have a question. How did these people get in your house ma'am?
A: They came through the living room window.
THE COURT: Excuse me?
A: They came through the living room window.
[DEFENSE COUNSEL]: Objection.
THE COURT: Overruled.
Does the State have any questions in light of the Court's question?
[THE STATE]: If I may.
* * * *
[THE STATE'S REDIRECT]: [Victim], when you went to bed that evening, was your house secured?
A: Yes, ma'am.
[THE STATE]: Your doors and windows closed.
A: Yes.
[THE STATE]: After the incident you were cut loose by [the six-year-old child].
Were you able to see anything unusual about the condition of any of the entrances into your home?
A: Yes.
[THE STATE]: What were you able to see and in what room?
A: In my living room to the window on the outside - in the living room, the window was up, and my blind was lying outside on the ground.
[THE STATE]: Was that the condition it was in when you went to bed?
A: No, ma'am.
[THE COURT]: Ask her what condition was it in when she went to bed.
[THE STATE]: What condition was it in when you went to bed?
A: It was hanging low-it was hanging up, and I had lowered my blinds.
(Emphasis added.) The victim went on to testify that the blinds were attached when she went to bed, and that the window was closed but not locked.
Rule 614(b) of the North Carolina Rules of Evidence states that, "[t]he court may interrogate witnesses, whether called by itself or by a party." N.C. Gen. Stat. § 8C-1 (2003), Rule 614. However, "the judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2003). In order to insure justice for the parties, the trial court may ask clarifying questions of a witness to alleviate confusion. State v. Quick, 329 N.C. 1, 21-22, 405 S.E.2d 179, 192 (1991). Such questions are only prejudicial error if "by their tenor, frequency, or persistence, the trial judge expresses an opinion." State v. Rinck, 303 N.C. 551, 562, 280 S.E.2d 912, 921 (1981). Additionally, the answer to the court's questions may provide useful testimony for the State without being prejudicial. State v. Smarr, 146 N.C. App. 44, 52-53, 551 S.E.2d 881, 886-87 (2001), disc. review denied, 355 N.C. 291, 561 S.E.2d 500 (2002). In fact, "[a] judge may ask questions . . . that elicit testimony which proves an element of the State's case so long as he does not comment on the strength of the evidence or the credibility of the witness." State v. Lowe, 60 N.C. App. 549, 552, 299 S.E.2d 466, 468 (1983).
In Smarr, we found the trial court did not commit prejudicial error in eliciting testimony showing that the defendant in thatcase possessed the intent to commit armed robbery, where the record was unclear as to whether the State had offered evidence of this element on their own. We held that the court's questions, attempting to clarify the time period of events in that case which also showed intent, was not error. Smarr, 146 N.C. App. at 52-53, 551 S.E.2d at 886-87.
In the case at bar, the trial court initiated further redirect testimony by the victim to determine more clearly how she believed defendants entered the duplex. There is no suggestion in the court's first question as to any weight that the victim's response might bring her credibility. Furthermore, we do not believe that merely because the second question asked by the court was through the State's attorney, that the court inferred any weight to the victim's response or her credibility. Defendants cite no case for this per se proposition of prejudice. There most be a more affirmative display by the trial court to infer prejudice. See Rinck, 303 N.C. at 62-63, 280 S.E.2d at 921. Regardless, as to the second question asked by the court through the State, the response by the victim simply repeated the information first elicited in the redirect testimony, that the victim went to bed with her windows closed. Therefore, defendants' assignment of error on this point is overruled.
In a related point, defendants argue that the trial court committed error during a jury charge conference with the prosecutor and two defense attorneys. In determining the charge for non-felonious breaking or entering, the trial court stated: COURT: I further propose as part of that instruction to instruct the jury or enfold in [sic] within that instruction the doctrine of acting in concert. If that's the State's theory.
Defendant claims this violated defendants' state and federal constitutional rights by providing the State with a theory of criminal liability and thus abandoning the court's impartial role.
N.C. Gen. Stat. § 15A-1231(b) (2003) requires trial courts, outside the presence of the jury, to conduct a conference to determine jury instructions. The conference should include:
[T]he judge must inform the parties of the offenses, lesser included offenses, and affirmative defenses on which he will charge the jury and must inform them of what, if any, parts of tendered instructions will be given. A party is also entitled to be informed, upon request, whether the judge intends to include other particular instructions in his charge to the jury.
N.C. Gen. Stat. § 15A-1231(b). We believe the above statement by the trial court to the State's attorney was in conformance with this statutory mandate. The transcript shows that the trial judge was merely clarifying what he believed the State's theory to be, based upon evidence the State had just put on for the charge of non-felonious breaking and entering against defendants. Therefore, defendants' assignment of error on this point is overruled.
II. Testimony of Examining Nurse/Medical Report
Defendants next contend the trial court erred in allowing the State's questioning of Nurse Woolard. We do not agree.
Codefendant Braxton made voluntary discovery requests to the State. In response, the State informed him that he could obtaindocuments from Detective Waters. Two days before the trial, codefendant Braxton's counsel went to Detective Waters to review discovery materials and was advised that, because no rape kit had been prepared, there was no medical report. On the day of trial, approximately 30 minutes before proceedings were to begin, Detective Waters informed defense counsel of the existence of a medical report. As a result, the trial court gave defendants 40 minutes to review the report and discuss it with Nurse Woolard. After this time, defendants motioned to exclude both the medical report, and Nurse Woolard's testimony contending they had not had adequate time to prepare. They contended at trial that had they known about the medical report, they would have "take[n] these records to a physician and g[otten] a second opinion as to the implications of them and what they purport[ed] to have found." In response to their motions, the court allowed the admission of the testimony of Nurse Woolard, and denied the admission of the medical report. The trial court ruled that Nurse Woolard could testify "about what she saw, what she heard, [and] what the victim said to her" when the victim came to the hospital for treatment after the attack.
N.C. Gen. Stat. § 15A-910 (2003) governs the regulation of discovery in criminal cases and empowers the court to apply sanctions for non-compliance. Two measures of sanctions a court may employ are to "[g]rant a continuance or recess" or to "[p]rohibit the party from introducing evidence not disclosed." N.C. Gen. Stat. § 15A-910. While the trial court has the authority to imposediscovery violation sanctions, it is not required to do so. State v. Hodge, 118 N.C. App. 655, 657, 456 S.E.2d 855, 856 (1995). Therefore, whether sanctions are imposed is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. Id. at 657, 456 S.E.2d at 857. "An abuse of discretion occurs when the trial court's ruling 'is so arbitrary that it could not have been the result of a reasoned decision.'" Chicora Country Club, Inc. v. Town of Erwin, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997), disc. review denied, 347 N.C. 670, 500 S.E.2d 84 (1998) (quoting White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).
In the case at bar, all that is at issue is the testimony of Nurse Woolard. The court did not allow the medical report into evidence. Based on our view of the record and transcript, defendants did not take other reasonable and/or normal steps in their research of this case that would have lead them to Nurse Woolard just as easily as the medical report may have. The transcript reflects the court's surprise that it was not until the first day of trial, when defendants were given the medical report, that they were on notice that the victim ever went to the hospital. The court stated:
THE COURT: I guess I'm - was there a preliminary hearing done in this case.
[DEFENDANT FOREMAN'S ATTORNEY]: I'm looking at my notes now, Your Honor.
THE COURT: That's what - I'm getting at.
Have y'all talked to this - have y'all interviewed the victim? Have y'all interviewed these officers?
Furthermore, had the medical report been turned over when it was requested, two days before trial, it is questionable whether defendants would have had time to interview the nurse and have the medical report reviewed for another opinion. Nurse Woolard's testimony was limited to stating the injuries she had witnessed on the morning that she examined the victim. This included: the victim was sobbing hysterically, had red marks on her right wrist, welt marks on her left buttock and cheek bottom, and superficial lacerations in her vaginal area. She gave no opinion as to the cause of these injuries.
We cannot say the trial court abused its discretion in allowing Nurse Woolard to testify. Upon a close review of Nurse Woolard's testimony, it is difficult to fathom what, but for the State's oversight in discovery, defendants could have put on as evidence to rebut her first-hand knowledge of the night in question. They were given 40 minutes to look over the medical report and confer with her before their cross-examination. In their cross-examination, it was established that she could not tell how the injuries were caused. Therefore, in light of the circumstances of this case, we overrule this assignment of error.
Defendant Foreman
I. Jury Instruction
Defendant Foreman contends that the trial court erred in denying his request that the jury be given an instruction on simpleassault.[1] The judge denied this request, and instructed the jury on attempted first degree sexual offense, attempted second degree sexual offense, and not guilty. We conclude the trial court was not required to instruct on simple assault.
The determination of whether one offense is a lesser included of another must be based on a strict analysis of the elements of the two offenses. State v. Wortham, 318 N.C. 669, 671, 351 S.E.2d 294, 296 (1987). Thus,
[A]ll of the essential elements of the lesser crime must also be essential elements included in the greater crime. If the lesser crime has an essential element which is not completely covered by the greater crime, it is not a lesser included offense. The determination is made on a definitional, not a factual basis.
State v. Weaver, 306 N.C. 629, 635, 295 S.E.2d 375, 379 (1982), overruled on other grounds by State v. Collins, 334 N.C. 54, 431 S.E.2d 188 (1993). As the evidence tends to show in this case, the elements of attempted first degree sexual offense are: (1) defendant intended to engage in a sexual act with the victim, by force or against the victim's will; (2) an overt act was done for that purpose but fell short of completing the offense, and (3) defendant was aided or abetted by one or more persons. N.C. Gen. Stat. § 14-27.4(a)(2) (2003); see also State v. Williams, 355 N.C. 501, 581, 565 S.E.2d 609, 655 (2002), cert. denied, 537 U.S. 1125, 154 L. Ed. 2d 808 (2003) (The elements of an attempt to commit any crime are: (1) the intent to commit the substantive offense, and(2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense.). Our Supreme Court in State v. Roberts, 270 N.C. 655, 155 S.E.2d 303 (1967), set forth the following definition of assault:
This Court generally defines the common law offense of assault as "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm."
Id. at 658, 155 S.E.2d at 305 (citation omitted).
In Wortham, our Supreme Court held that assault on a female is not a lesser included offense of attempted second degree rape. The Court stated that the legal meaning of the "overt act" element of attempted rape is different than the legal meaning of "assault" in the charge of assault on a female. Therefore, assault on a female was not a lesser included offense of attempted second degree rape. Wortham, 318 N.C. at 671-72, 351 S.E.2d at 296. Simple assault possesses the element of "assault," and attempted first degree sexual offense possesses the element of the "overt act," which puts Wortham on point with the case at bar. Therefore, the trial court did not err in failing to instruct the jury on simple assault, because it is not a lesser included offense of attempted first degree sexual offense.
II. Prior Consistent Statement
Defendant Foreman next contends, on the grounds that it was hearsay evidence, that the trial court committed prejudicial errorin admitting the testimony of Officer Latta relating the victim's statement to him.
Earlier in the trial, the victim testified that defendant Foreman "took part of the comb that you comb your hair with and tried to insert it into [her] vagina." Later, after the jury had been instructed that the purpose of his testimony was to corroborate the victim's earlier testimony with a prior consistent statement, Officer Latta testified that the victim's statement to him was that defendant "Foreman began penetrating [the victim's] vagina with a red Afro Comb which he brought with him." Defendant Foreman focuses on the distinction between "tried to insert" and "penetrated" as being inconsistent and not corroborative.
North Carolina law is clear that prior consistent statements made by a witness testifying at trial, that would otherwise be inadmissible hearsay when testified to by a later witness, may be admitted for the limited purpose of corroborating the prior testimony and bolstering the prior witness's credibility. State v. Riddle, 316 N.C. 152, 157, 340 S.E.2d 75, 78 (1986). When offered for this purpose, the evidence of a prior consistent statement must in fact corroborate a witness's later testimony. However, there is no requirement that the rendition of a prior consistent statement be identical to the witness's later testimony. State v. Swindler, 129 N.C. App. 1, 4-5, 497 S.E.2d 318, 320-21, aff'd per curiam, 349 N.C. 347, 507 S.E.2d 284 (1998), cert. denied, 352 N.C. 598, 545 S.E.2d 220 (2000). "[S]light variances in the corroborativetestimony do not render it inadmissible." State v. Covington, 290 N.C. 313, 337, 226 S.E.2d 629, 646 (1976).
In the case at bar, we find "penetrated" and "tried to insert" of such slight variation as to not constitute error on the basis of corroboration. On the facts of this case, a reasonable jury could determine that in penetrating the vagina with a comb, defendant was trying to fully insert the comb. Thus, Officer Latta's statement did in fact corroborate that of the victim's.
III. Sufficiency of the Evidence
Defendant Foreman last argues that there was insufficient evidence to support the jury's determination of guilt on attempted first degree sexual offense and non-felonious breaking or entering. We do not agree.
In ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State and give the State every reasonable inference to be drawn therefrom. See State v. Lee, 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998). The State must present substantial evidence of each element of the offense charged. See id. "[T]he trial court should consider all evidence actually admitted, whether competent or not, that is favorable to the State." State v. Jones, 342 N.C. 523, 540, 467 S.E.2d 12, 23 (1996). "If there is substantial evidence - whether direct, circumstantial, or both - to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied[,]" State v. Locklear, 322 N.C. 349, 358, 368 S.E.2d 377,383 (1988); however, if the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed." State v. Malloy, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983).
A. First Degree Sexual Offense
The trial judge submitted the charge of first-degree sexual offense on the theory that defendant Foreman was aided and abetted by codefendant Braxton. The elements of first degree sexual offense, as shown in this case, are that:
§ 14-27.4. First-degree sexual offense.
(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:
* * * *
(2) With another person by force and against the will of the other person, and:
* * * *
c. The person commits the offense aided and abetted by one or more other persons.
N.C. Gen. Stat. § 14-27.4. Defendant Foreman contends there was insufficient evidence of the element of the sexual act for the charge of first degree sexual offense.[2]
The identity of defendant Foreman as the principal perpetrator in this case is uncontested. Furthermore, there is substantial evidence of defendant Foreman's use of force and against the willof the victim and that he was aided and abetted in his use of force. The issue then becomes whether there is sufficient evidence of a sexual act. We find that the testimony of the victim, as corroborated by Officer Latta, relating to the details of the use of the comb on her vagina, and the testimony of Nurse Woolard relating the small lacerations on the victim's vagina which are consistent with the victim's account, to be substantial evidence of a sexual act. See, e.g., State v. Rogers, 322 N.C. 102, 105, 366 S.E.2d 474, 475 (1988) (where defendant put his finger between her legs and in her "pee pee" and "private spot"); State v. Griffin, 319 N.C. 429, 435, 355 S.E.2d 474, 475 (1987) (nine-year-old victim testified defendant touched her on her "private parts"); State v. Watkins, 318 N.C. 498, 500, 349 S.E.2d 564, 565 (1986) (seven-year-old victim testified defendant placed his finger in her "coodie cat" and used dolls to indicate the vaginal area); State v. Smith, 315 N.C. 76, 79, 337 S.E.2d 833, 837 (1985) (four-year-old victim testified defendant touched her "project" with his "worm" and pointed to her vaginal area).
B. Non-felonious Breaking or Entering
Misdemeanor breaking or entering requires proof of only the wrongful breaking or entry into a building or dwelling. State v. Freeman, 307 N.C. 445, 451, 298 S.E.2d 376, 380 (1983). It is not necessary to prove both breaking and entering, only one or the other. State v. Myrick, 306 N.C. 110, 114, 291 S.E.2d 577, 579 (1982). There is sufficient and undisputed evidence of the defendant Foremans' entry. Additionally, we find there to besufficient evidence of breaking when the victim's testimony details that the windows were closed when she went to sleep, that the duplex was secure, and defendant Foreman did not have a key. Also, the testimony of the two officers provided evidence that the blinds had been tampered with and the windows had been opened.
All assignments of error as to defendant Foreman are overruled, or deemed abandoned under Rules 28 of the North Carolina Rules of Appellate Procedure.
Codefendant Braxton
I. Testimony of Six-year-old Child
Codefendant Braxton contends that the trial court erred in finding that the six-year-old child (who was seven at the time of her testimony) was competent to testify. We do not agree.
The question of a witness's competency is a matter that rests in the sound discretion of the court. State v. Spaugh, 321 N.C. 550, 554, 364 S.E.2d 368, 371 (1988). "Absent a showing that the trial court's ruling could not have been the result of a reasoned decision, it will not be disturbed on appeal." Id. Our Supreme Court has held that if evidence presented "clearly supports a conclusion that the witness is competent, the trial court's failure to conduct a voir dire inquiry and make specific findings and conclusions concerning the witness's competency is, at worst, harmless error." Id. at 555, 364 S.E.2d at 372. This Court has allowed the testimony of a seven-year-old child after she told the trial judge her name, testified that she understood what an oath was, placed her hand on the Bible and swore to tell the truth, andstated that she knew what the truth was. State v. Gilbert, 96 N.C. App. 363, 364-65, 385 S.E.2d 815, 816 (1989).
In the case at bar, both defendants were given the opportunity to question the witness as related to her capacity. Here the voir dire clearly shows that the seven-year-old child understood the difference between the truth and a lie, and the consequences of lying. The trial court did not abuse its discretion in finding her competent.
II. Sufficiency of the Evidence of Attempted Second Degree Sexual Offense
In his last assignment of error, codefendant Braxton contends that there was insufficient evidence to support a conviction of attempted second degree sexual offense. We do not agree.
Applying the same standard of review of a trial court's denial of a motion to dismiss, as set out previously in this opinion, we turn to the elements of attempted second degree sexual offense. We begin by noting that the State's theory in prosecuting defendant on this charge was that he "acted in concert" with defendant Foreman. We have already determined that the evidence before the jury was sufficient to sustain a guilty verdict of defendant Foreman for the charge of attempted first degree sexual offense, an offense containing both elements of second degree sexual offense: (1) a sexual act and (2) by force and against the will of the other person. N.C. Gen. Stat. § 14-27.5. Therefore, we need only address whether there is sufficient evidence that codefendant Braxton"acted in concert" with defendant Foreman to sustain codefendant Braxton's conviction.
If the defendant is present with another and with a common purpose does some act which forms a part of the offense charged, then there is substantial evidence of "acting in concert" and a judge must explain and apply the law. State v. Mitchell, 24 N.C. App. 484, 486, 211 S.E.2d 645, 647 (1975). This is true "although the other person does all the acts necessary to effect commission of the crime." State v. Abraham, 338 N.C. 315, 346, 451 S.E.2d 131, 147 (1994).
In the case at bar, there was evidence that codefendant Braxton acted in concert based on the following: He and defendant Foreman broke into the victim's duplex in the early morning hours of 2 October 2001; he and defendant Foreman went to the victim's room and tied her wrists together before she awoke; he held the victim's legs while defendant Foreman assaulted her; he calmed the children in the duplex so they would not interrupt the assault; he held the victim's hands during the sexual act and tried to calm her; and at no point did he attempt to stop the incident. Codefendant Braxton made the commission of this crime possible, helping to restrain the victim, and divert the children in the duplex from witnessing or distracting defendant Foreman in the commission of the crime. This is substantial evidence that codefendant Braxton was both present and, with a common purpose, assisted in the commission of the sexual offense of the victim.
Therefore, all assignments of error as to codefendant Braxton are overruled, or deemed abandoned under Rule 28 of the North Carolina Rules of Appellate Procedure.
After close review of the briefs, record, and transcript of this case, we find that defendants received a fair trial and uphold their convictions on all counts.
No error.
Judges HUDSON and LEVINSON concur.
Report per Rule 30(e).

Both defendants made this request, but only defendant Foreman has preserved this issue for review.

Defendant raised no issue and cited no law as to whether the evidence was sufficient on the element of aiding or abetting.