STATE OF NORTH CAROLINA v. RASEAN MARQUIS POTTS

No. COA10-516

(Filed 7 December 2010)

**1. Appeal and Error— preservation of issues—objection not renewed**

Defendant did not preserve for appellate review the question of whether the trial court erred by admitting into his cocaine prosecution testimony that he was identified through a computer program that included people arrested in Mecklenburg County. The prosecutor withdrew the question after defendant objected, but asked it again without objection.

**2. Appeal and Error— preservation of issues—anticipatory corroboration—no motion to strike**

Defendant did not preserve for appellate review the admission of what one officer said to another about defendant's shoe size where the testimony was admitted as anticipatory corroboration and defendant did not move to strike when it became clear that the testimony was not corroborative.

Appeal by defendant from judgment entered 23 September 2009 by Judge Ronald E. Spivey in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 October 2010.

*Attorney General Roy Cooper, by Special Deputy Attorney General Daniel D. Addison, for the State.*

*Michele Goldman for defendant.*

ELMORE, Judge.

Rasean Marquis Potts (defendant) was found guilty by a jury of felony possession of cocaine. Defendant was sentenced to a minimum of five months and a maximum of six months in the custody of the Department of Corrections. The trial court suspended this sentence and placed defendant on supervised probation for twenty-four months. The court also required defendant to provide a DNA sample pursuant to N.C. Gen. Stat. § 15A-266.4 and to pay $2,990.50 in attorney fees, restitution, fines, and court costs. Defendant now appeals, alleging evidentiary errors. After careful consideration, we hold that defendant received a trial free from error.

**[1]** Defendant first argues that the trial court erred by allowing the jury to learn that defendant had previously been arrested. Defendant bases his argument on the following colloquy between the prosecutor and one of the investigating officers, Detective Warren Flowers of the Charlotte-Mecklenburg Police Department:

Q. Had you ever seen or known the Defendant prior to November the 7th, 2007?

A. I saw his picture on KDCOPS, but I never had any direct contact with him.

Q. What is KDCOPS?

A. KCOPS [sic] is a reporting system by the Charlotte-Mecklenburg Police Department.

[Defense counsel]: Objection, Your Honor.

COURT: Overruled. I will allow him to state the foundation value.

[Prosecutor]: I will withdraw the question at this time, Your Honor.

COURT: Okay. The question is withdrawn.

* * *

[Detective Flowers]: . . . At this point in time we went to the KDCOPS system to identify who we later found to be Mr. Darryl Potts.

Q. And what is KDCOPS?

A. KDCOPS is a reporting system that is used by the Charlotte-Mecklenburg Police Department where reports are made in the system. It is also used to identify the people that have been arrested in Mecklenburg County.

Q. You may continue. How did you end up at [address] on that date?

Defendant argues that the trial court erred by admitting Detective Warren's testimony that he had used KDCOPS to identify defendant because it violated Rule 404(b) of our Rules of Evidence. Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2009).

We do not reach the merits of defendant's argument because he failed to preserve it for appellate review. Although defendant objected after the first mention of KDCOPS, the prosecutor withdrew the question. Then, when the prosecutor asked again if Detective Flowers would explain KDCOPS, defendant did not object. Detective Flowers answered the question, and defendant did not object. Assuming *arguendo* any benefit from defendant's objection to the first KDCOPS question, "the benefit of an objection is lost when the same or similar evidence is later admitted without objection." *State v. Holadia,* 149 N.C. App. 248, 256, 561 S.E.2d 514, 520 (2002). Accordingly, defendant did not preserve the issue for our review. N.C.R. App. P. 10(b)(1) (2009). "Defendant has further waived his opportunity for plain error review of this issue. Rule 10(c)(4) of the North Carolina Rules of Appellate Procedure requires that an assignment of error be 'specifically and distinctly contended to amount to plain error.' " *State v. Bell,* 359 N.C. 1, 27, 603 S.E.2d 93, 111 (2004) (quoting N.C.R. App. P. 10(c)(4)). Because defendant has not argued plain error, we cannot consider his argument and it is dismissed.

**[2]** Defendant next argues that the trial court erred by allowing Detective Flowers to testify that another police officer, Officer J.E. Grier, told him that defendant wore a size eight and a half shoe. This was particularly damning testimony for defendant because the cocaine was found in a pair of Nike shoes, size eight and a half, and defendant was prosecuted under a theory of constructive possession. Detective Flowers's initial testimony about defendant's shoe size occurred during redirect examination by the State:

[Prosecutor]: What made you think that the shoes, the Nike shoes, belonged to [defendant]?

[Detective Flowers]: The size of the shoe was eight and a half, and Officer Grier advised that the Defendant . . .

[Defense counsel]: Objection as to what Officer Grier advised.

[Prosecutor]: You can't testify to anything that . . .

COURT: Is he going to testify to the jury? Well, I will sustained [*sic*] it.

[Prosecutor]: Yes. He is going to testify. You can testify as to what Officer Grier said.

**STATE v. POTTS**

[208 N.C. App. 451 (2010)]

COURT: You are going to have Officer Grier testify to that?

[Prosecutor]: Yes.

COURT: Okay.

[Defense counsel]: As to what Officer Grief will say . . .

[Prosecutor]: It will be for corroboration purposes.

COURT: Members of the jury, the Court will allow this testimony only as to the extent that it corroborates the testimony later in this trial from Officer Grier.

The State's question again?

REDIRECT EXAMINATION BY [THE PROSECUTOR] (Continued):

Q. What made you think that the shoe belonged to [defendant]?

A. The Nike—the blue and white Nike was a size eight and a half and I was advised by Officer Grier that the Defendant in fact wore an eight and half [*sic*].

Q. Repeat that last statement.

A. I was advised by Officer Grier that the Defendant's shoe size that he had on at that time was eight and a half. ·

Q. But you don't know how that was determined?

A. Officer Grier went into the room and he told me that he looked at the shoe.

When Officer Grier testified, the prosecutor asked him about the blue and white Nikes:

Q. Did you investigate who the shoe belonged to?

A. Based on what we found, the mail, in the room and there was a lot of clothing that was for a smaller individual, which we thought matched [defendant].

[Defense counsel]: Objection.

COURT: Overruled. I will allow him to give his opinion that it was certainly a possibility.

During re-cross examination, defense counsel probed further into Officer Grier's knowledge about the blue and white Nikes:

Q. Have you ever worked in a shoe store?

A. No, sir.

Q. Have you ever measured anybody's foot for shoes?

A. No.

Q. But your testimony is that you can look at someone and tell how tall they are and tell what size shoe they wear?

A. I can tell height but not about the shoe size.

Q. You can guess what height they are?

A. Yes.

Q. But you can't guess the shoe size?

A. The shoe size, no.

Q. You have no idea what size shoe my client wears, do you?

A. No.

We agree with defendant that Officer Grier did not testify either that he told Detective Flowers that defendant wore a size eight and a half shoe or that he had personal knowledge that defendant wore a size eight and a half shoe. Detective Flowers's testimony, which otherwise would have been hearsay, was admitted for the purpose of corroborating Officer Grier's anticipated testimony. Now defendant argues that, because Officer Grier did not offer the testimony anticipated by the court's decision to admit Detective Flowers's corroborative testimony, we should award him a new trial.

As a general rule, "[p]rior consistent statements of a witness are admissible as corroborative evidence even when the witness has not been impeached. However, the prior statement must in fact corroborate the witness' testimony." *State v. Riddle*, 316 N.C. 152, 157, 340 S.E.2d 75, 78 (1986) (citations omitted). Although normally this rule applies to prior statements, we have also applied it to anticipated testimony. *See, e.g., State v. Thompson*, 73 N.C. App. 60, 67, 325 S.E.2d 646, 651 (1985) (finding no error when the trial court allowed Witness A to testify about what Witness B told him before Witness B testified because Witness A's "testimony was offered to corroborate the anticipated testimony of" Witness B). Our Supreme Court has also applied the rule, but noted, as a practical matter, that admitting corroborating testimony before the testimony to be corroborated is "premature." *State v. Hinson*, 310 N.C. 245, 253, 311 S.E.2d 256, 262 (1984).

Regardless, defendant did not preserve this issue for appellate review. He should have alerted the trial court by, for example, moving to strike Detective Flowers's testimony once it became clear that Officer Grier had not offered the anticipated evidence about defendant's shoe size. When a defendant fails "to make a timely objection when [he] had . . . the opportunity to learn that the evidence was objectionable," he waives the inadmissibility of the evidence. *State v. Jeeter*, 32 N.C. App. 131, 134, 230 S.E.2d 783, 785 (1977) (citations omitted). In *Riddle*, the defendant argued that the trial court improperly admitted evidence by a witness, Amy Collins, who testified about what another witness, Pamela Riddle, had told her. *Riddle*, 316 N.C. at 156, 340 S.E.2d at 77. The defendant objected after the State asked Collins whether Pamela Riddle "had told her about any conversations that she had had with her sister, Lisa." *Id.* However, the defendant did not move to strike the answer, but argued on appeal "that the question asked of Ms. Collins anticipated or suggested that the answer would be inadmissible, and therefore his objection was sufficient and alone preserved the issue for appellate review." *Id.* The Supreme Court disagreed, explaining,

> Where inadmissibility of the answer is not indicated or suggested by the question, but becomes apparent by some feature of the answer, the objection should be made as soon as the inadmissibility becomes known and should be in the form of a motion to strike out the answer or the objectionable part of it.

*Id.* (citation omitted.) The Court concluded, "Thus, even assuming, *arguendo*, that the answer was not corroborative, the defendant's failure to move to strike it waived his objection." *Id.*

Here, defendant did not move to strike Detective Flowers's testimony once it became clear that it was not corroborative, nor did he alert the trial court in any other manner of that fact. In accordance with *Riddle*, we hold that defendant did not preserve this issue for appellate review, and so we do not consider the merits of his argument.

No error.

Judges JACKSON and THIGPEN concur.